JOHN FALCONE *v.* NIGHT WATCHMAN, INC., ET AL.
(4044)

SPALLONE, BIELUCH and BERDON, Js.

Argued March 10—decision released June 9, 1987

*Susan M. Cormier,* with whom was *Wesley W. Horton,* for the appellant (defendant Zbigniew Rozbicki).

*William C. Franklin,* for the appellee (plaintiff).

BERDON, J. The defendant Zbigniew Rozbicki appeals from the judgment of the trial court awarding the plaintiff damages in the amount of $11,005.22 (which sum includes interest in the amount of $2728.57) for goods sold and delivered. The trial court found for the plaintiff on the two independent grounds that the debt due for the goods sold and delivered was a primary undertaking by the defendant Rozbicki to which the statute of frauds does not apply, and that the corporation was the alter ego of the defendant Rozbicki, requiring that

its corporate veil be pierced. Since we find no error in the trial court's conclusion that the corporate entity should be disregarded in order to impose personal liability on the defendant Rozbicki, it will not be necessary to review the claims of error in regard to the cause of action alleging that the debt was his primary obligation.[1]

The plaintiff was a supplier of wholesale fruit and other produce. He commenced his action against the defendants, Night Watchman, Inc., and Rozbicki. Prior to trial, the corporate defendant entered into a stipulation providing for judgment in favor of the plaintiff.

The defendant Rozbicki is the sole stockholder of the defendant Night Watchman, Inc., and a practicing lawyer. The defendant corporation operated a restaurant and in January, 1980, its chef arranged with the plaintiff to purchase and have delivered to the restaurant fruits and other produce on a daily basis.

When it came to the plaintiff's attention that he was not being paid, he contacted the defendant Rozbicki. The defendant Rozbicki orally promised that he would

---

[1] The remaining error assigned in this case is that the trial court refused to find admitted as facts all the requests for admission of facts filed by the defendant Rozbicki. They were denied by the plaintiff, but his answer was filed four days after the 30 days required under § 239 of the Practice Book. The short answer to this claim is that none of the alleged facts in the requests for admission was claimed for the count under which the plaintiff seeks to pierce the corporate veil. More important, for the defendant to have taken advantage of any admission, these requests and answers (if any) must be introduced into evidence, which was not done in this case. 8 C. Wright & A. Miller, Federal Practice and Procedure § 2264 (1970). Otherwise, the party against whom the admissions are to be used would not have an opportunity to test their evidentiary competence or to illuminate their significance. *S. Kemble Fischer Realty Trust* v. *Board of Appeals,* 9 Mass. App. 477, 479, 402 N.E.2d 100, cert. denied sub nom. *Costello* v. *Board of Appeals,* 449 U.S. 1011, 101 S. Ct. 566, 66 L. Ed. 2d 468 (1980). In this case the defendant merely objected to the introduction of evidence that contradicted the claimed admissions.

assume the financial responsibility for the produce delivered to the restaurant, and this promise was repeated on several occasions. When the restaurant ceased doing business, Rozbicki denied that he was personally liable for the purchase of the produce, claiming that the purchase was a corporate debt of the defendant Night Watchman, Inc.

Generally, a stockholder is not liable for the debts of the corporation. "Courts will, however, disregard the fiction of a separate legal entity to pierce the shield of immunity afforded by the corporate structure in a situation in which the corporate entity has been so controlled and dominated that justice requires liability to be imposed on the real actor." *Saphir* v. *Neustadt,* 177 Conn. 191, 209, 413 A.2d 843 (1979). The piercing of the corporate veil is equitable in nature. *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.,* 187 Conn. 544, 555, 447 A.2d 406 (1982). " 'When the statutory privilege of doing business in the corporate form is employed as a cloak for the evasion of obligations, as a mask behind which to do injustice, or invoked to subvert equity, the separate personality of the corporation will be disregarded.' *Mull* v. *Colt Co.,* 31 F.R.D. 154, 166 (S.D.N.Y. 1962)." *DeMartino* v. *Monroe Little League, Inc.,* 192 Conn. 271, 275, 471 A.2d 638 (1984). Under Connecticut law, the corporate shield may be disregarded either under the "instrumentality"[2] or "identity" rules.

---

[2] " 'The instrumentality rule requires, in any case but an express agency, proof of three elements: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." (Emphasis added.) *Saphir* v. *Neustadt,* 177 Conn. 191, 209, 413 A.2d 843 (1979).

The trial court relied upon the "identity" rule which has been stated in *Zaist* v. *Olson,* 154 Conn. 563, 576, 227 A.2d 562 (1967) as follows: " 'If plaintiff can show that there was such a unity of interest and ownership that the independence of the corporation had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise.' *Mull* v. *Colt Co.,* [supra, 163], *Walkovszky* v. *Carlton,* 24 App. Div. 2d 582, 583, 262 N.Y.S.2d 334." A key factor in making a determination of whether the corporate shield should be disregarded is the degree of control or influence exercised over the corporation by the individual sought to be held liable. *Christian Bros., Inc.* v. *South Windsor Arena, Inc.,* 7 Conn. App. 648, 651, 509 A.2d 1095 (1986).

Although the identity rule "primarily applies to prevent injustice in the situation where two corporate entities are, in reality, controlled as one enterprise because of the existence of common owners, officers, directors or shareholders and because of the lack of observance of corporate formalities between the two entities"; *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.,* supra, 560; the rule may also be employed in an appropriate case to hold an individual liable. *Saphir* v. *Neustadt,* supra, 209–10; *Zaist* v. *Olson,* supra, 575.

In making our determination whether the trial court's conclusions were legally and logically correct, were based upon factual findings that were supported by the evidence and were not clearly erroneous; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980); we do not retry the facts. *Jones* v. *Litchfield,* 1 Conn. App. 40, 42, 467 A.2d 936 (1983), cert. denied, 192 Conn. 802, 470 A.2d 1218 (1984). We

are, however, not unmindful that the corporate shield should not be lightly disregarded to hold a stockholder liable, even when, as in the present case, there is but one stockholder. "To do so would be to act in opposition to the public policy of this state as expressed in legislation concerning the formulation and regulation of corporations." *Saphir* v. *Neustadt,* supra, 212.

The trial court concluded that the defendant "The Night Watchman, Inc., was merely the alter ego of Mr. Rozbicki. There was such a unity of interest and ownership between Mr. Rozbicki and the corporation that the interests of justice will be served only by disregarding the shield of the corporate structure." The facts the court found to support these conclusions were that the defendant Rozbicki owned 100 percent of the stock, the only directors and officers were salaried employees at his law office, the defendant Rozbicki established policy for the corporation and its restaurant and that policy was implemented by his law office manager without corporate compensation,[3] the corporation owned no assets and the defendant Rozbicki provided, rent free, the building, the land, the tables, the dishes, the equipment and all other articles necessary for the corporation to operate its restaurant business. Although a separate corporate checking account was maintained for the payment of the debts incurred by the restaurant, it was clear that the corporate account was "bank-

---

[3] The domination over the policy of the corporation existed even though its bylaws designated officers and functions of said officers. "Using a nominee to perform the duties of officer and director is quite unlike using a nominee to hold title to shares equitably owned by the nominor, a practice which, if not common is not uncommon in business practice and may be dictated by legitimate business or personal needs. Unlike shareholders, officers and directors even of a closely held corporation have statutory and fiduciary duties incident to their offices which cannot be delegated. See generally 3 Fletcher, Cyc. Corp. (Perm. Ed. 1975 Rev.) § 990." *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.,* 187 Conn. 544, 569, n.3, 447 A.2d 406 (1982) (*Borden, J.,* dissenting).

rolled'' by the defendant Rozbicki from his personal funds by covering its checks. Minutes were not kept of corporate meetings, the records of the corporation did not acknowledge the loans from Rozbicki,[4] proper records were not kept of the corporation's funds and annual reports were not filed by the corporation until after the business had closed and a claim had been brought against Mr. Rozbicki to hold him personally liable. Furthermore, he had assumed the debt due to the plaintiff and assured him that he would pay it from his personal assets. Indeed, the trial court found that ''at one point he told the plaintiff that he was expecting to settle some legal cases soon and he would pay him at such time as he received his legal fees therefrom.''

There are no hard and fast rules for determining when the corporate veil should be disregarded. '' 'The circumstances which have been considered significant in an action to disregard the corporate entity have rarely been articulated with any clarity. Perhaps this is true because the circumstances necessarily vary according to the facts of the particular case. Therefore, each case in which the issue is raised should be regarded as sui generis, to be decided in accordance with its own underlying facts. Since the issue is thus one of fact, its resolution is particularly within the province of the trial court and such resolution will be regarded as presumptively correct and will be left undisturbed on appeal unless it is clearly erroneous.' (Footnotes omitted.) 1

[4] The defendant Rozbicki argues that the facts found by the court are incorrect in two instances. First, he attacks the factual basis for the Court finding that ''[m]inutes were not kept of corporate meetings.'' In view of the minutes of the meeting from April 1980 to September 1981, which were made exhibits, it is obvious the court had reference to the period prior to April 1980. Second, Rozbicki challenges the court's finding that he made the loans without any acknowledgement from the corporation. The minutes of the meeting that he relies upon merely state that funds are needed from the defendant Rozbicki and that if such funds are made available they would be recognized as a corporate debt. The minutes do not state that funds were advanced or the amount advanced.

Fletcher, Cyc. Corp. (Perm. Ed. 1981 Sup.) § 41.3, p. 38." *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.,* supra, 556 n.7. In this case, it is clear that the defendant Rozbicki completely dominated the corporation which owned no assets, that the corporation was able to operate the restaurant only as a result of the assets made available by Rozbicki, and that Rozbicki promised the plaintiff creditor that he would be responsible for the debt owed to him by the corporation. These facts found by the trial court fully support its conclusions that there was such a unity of interest and ownership between both these defendants that the independence of the defendant Night Watchman, Inc., had in effect ceased or never existed and that justice and equity require the corporate shield to be disregarded in order to impose personal liability on the defendant Rozbicki.

There is no error.

In this opinion the other judges concurred.