[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff wife against the defendant husband. The parties were married on July 2, 1977 in Milford, Connecticut. There are four children issue of the parties, Alicia who is 12 years of age, Meaghan who is 7 and twins Caitlen and Samantha who are 4. The plaintiff and the four children are living in the family home at 195 Mountain Brook Drive in Cheshire. The defendant is living with his sister in Wallingford.
The plaintiff is 37 years of age. She is a college graduate with a B.A. degree having majored in psychology. She is presently in counselling but her health is otherwise fine. Her last employment was in 1980 as a receptionist for an orthodontist. She has taken children in as a day care provider, but found that this was too overwhelming and is no longer doing this.
Alicia is in Junior High School. Meaghan is in second grade at Norton Elementary School and the twins are in nursery school two afternoons a week for two and half hours. Alicia has had special problems since 1988 and is seen by a therapist, and the children and the plaintiff attend family therapy at the Yale Child Study Center.
The plaintiff has complained that the defendant became emotionally and physically abusive in 1988. However, there were problems in the marriage long before that. She complained that the defendant was unhappy when she told him she was pregnant with Alicia. He felt that the child would interfere with his plans. In 1988 he said he didn't want to be married anymore because he wanted to be able to do things "on the spur of the moment." She testified that there were numerous disagreements over money, but there was always money for whatever he wanted. Then there is the incident of the "Dear Eddie" letter which he completely disclaims. It is clear from the testimony that the marriage of the parties has broken down irretrievably. While the defendant denies the plaintiff's claims of abuse and lack of attention, the court finds the plaintiff's testimony to be more credible in this regard and finds that the defendant is at fault for the breakdown of the marriage.
The finances of the parties are in a deplorable state. The defendant has filed a petition in bankruptcy. (See plaintiff's Exhibit A). The bankruptcy court has granted the plaintiff's motion to terminate the automatic stay on the filing of the bankruptcy petition. (See plaintiff's Exhibit B). It is the defendant's wish to salvage as much of his CT Page 1120 property as he can out of this proceeding and the bankruptcy proceeding. However, the plaintiff is trying desperately to salvage as much as she can for herself and the four minor children.
While the defendant was employed until June 1991 at a position in New York City earning annually $125,000.00, he has been unemployed since that time. He is presently receiving unemployment compensation of $280.00 on the first and fifteenth of each month. In December 1991 while playing with his children, he hurt his leg. The leg became infected and on December 21 he was hospitalized at Stamford Hospital until January 1, 1992. He has osteomyelitis in his right leg, his leg is presently in a cast, and he is presently receiving medication by means of a portable intravenous device. He is walking with crutches. He states that he has had two "ruptured" discs since 1975. He has treated with a chiropractor for this problem the last 3% years. He has been able to work in the house in Old Lyme and to perform his work while at Coopers Lybrand without difficulty. This involved commuting between New York and Cheshire and traveling out of the state 70% of the time. He is 38 years of age. He attended college for four years, but did not receive his bachelor's degree. He worked as an auto body repairer while attending college. The parties moved to Georgia in 1978 so that the defendant could attend the University of Georgia, and the defendant did auto body repair work at that time. In 1979 he was hired as a machinist at Sikorsky and subsequently at Avco. In 1983 he worked up to a management position at Avco as a process engineer. In 1984 he was hired at Pratt 
Whitney as a manufacturing engineer. In 1988 he was hired as a consultant with Arthur Young accounting firm in New York City and in 1989 hired by Coopers Lybrand also in New York City. He was terminated by Coopers Lybrand in March 1991 with severance pay until June 1991. He has been looking for employment ever since. His pay at Coopers Lybrand was $125,000.00 per year. He has mailed resumes to 45 to 50 search firms and applied to 45 job openings through the paper and agencies. He has had only 5 or 6 interviews. On two occasions he has gone back for second interviews but has received no job offers. The plaintiff has claimed that the orders for periodic alimony and support should be based upon earning capacity. The court considers that the defendant's positions at Arthur Young and Coopers Lybrand were so unusual that it will be extremely difficult for him to find such high salaried positions again. It may be that the defendant will have to return to work as an auto body mechanic or skilled machinist.
At the time of the commencement of this action on February 14, 1991 the parties owned four parcels of real property. They were in the process of remodeling a house in Old Lyme, they were CT Page 1121 living in the home on Mountain Brook Drive in Cheshire, they owned a building lot in Bethany and owned land in Jackson, New York. The property on Mountain Brook Drive in Cheshire the plaintiff values at $225,000.00. The defendant values this property at $325,000.00. It is subject to mortgages which have not been paid since June 1991 in principal amounts of $127,500.00 and $44,632.00. The property in Old Lyme was lost in foreclosure on December 23, 1991. The property in Bethany has been valued in the defendant's affidavit at $8,000.00. The defendant has testified that this is a 9/10 acre lot in a 3 acre zone, nonconforming and with wetlands. It is described in the bankruptcy proceedings as "Building Lot #9 Gaylord Mountain Road." The property in New York was purchased in 1988 for $29,900.00 and is used for hunting and fishing. It is subject to a purchase money mortgage in the amount of $12,200.00. The defendant testified he believed it had a value of $30,000.00 to $35,000.00, although he valued it in his financial affidavit at $27,000.00. The defendant seeks the assignment of the plaintiff's interest in this property and he indicated that he can raise the money to buy his share from the Trustee in bankruptcy.
The bankruptcy court has released the stay on the defendant's interest in the Mountain Brook Drive property in Cheshire and the Bethany property. With regard to the Cheshire property, the court finds a value of $300,000.00 to $325,000.00 for its fair market value. The court finds a value of $27,000.00 for the property in Jackson, New York.
On March 27, 1991 the parties appeared before Judge DeMayo and the court, upon the agreement of the parties, entered an order that neither party was to dissipate any assets in their respective possession; that the defendant would pay the plaintiff by way of unallocated alimony and support the sum of $425.00 every two weeks ($212.50 per week) together with the mortgage, taxes and insurance, utilities, phone and those items "that are listed on the financial affidavit of both of the parties." (See plaintiff's Exhibit C) Subsequently on July 10, 1991 the parties appeared before Judge Gordon on the defendant's motion to modify the pendente lite motions dated June 13, 1991 (docket entry #115). Because the hearing on this matter began at 4:50 p.m. and presented a difficult financial solution, the court, after hearing argument of counsel, suggested the parties sit down with the court and work out an agreement for the best use of the limited funds available to the parties. (See plaintiff's Exhibit D). The parties did reach an agreement which is signed by counsel for each of the parties and by the plaintiff but not by the defendant (see plaintiff's Exhibit E), however, subsequently signed by the defendant (see defendant's Exhibit 9). The stipulation, CT Page 1122 however, was not thereafter submitted to the court for its approval and modification of the prior existing orders. On August 22 the defendant filed a petition in bankruptcy. For that reason the defendant would not agree to the filing of the stipulation believing that the assets to fund the stipulation were then in the bankrupt estate (see plaintiff's Exhibit F). The plaintiff now claims an arrearage on the pendente lite orders entered before Judge DeMayo, and claims an arrearage on the mortgages and taxes on all four properties from June 1991 to date (including the Old Lyme property lost in foreclosure,) the auto loan payments and auto taxes and alimony of $850.00 per month less credit for payments made.
The question in this case, at least in its equitable consideration, is not unlike the question presented in the case of Gould v. Gould, 11 Conn. App. 218 (1987). Here, however, the defendant did bring a motion for modification, it was presented to the court and the parties did execute an agreement. This is one of those cases presenting unique or compelling circumstances justifying or requiring equitable relief. Guss v. Guss, 1 Conn. App. 356, 363, 472 A.2d 790 (1984). The relief requested by way of an order on the claimed arrearage is, therefore, denied.
As previously noted, there was an order entered that neither party was to dissipate any assets in their respective possessions. Faced with a situation where utilities were being shut off, and no money to pay for medical insurance for herself and the children, the plaintiff did in July 1991 sell the following property in her possession belonging to the defendant: a John Deere tractor with all its equipment and a Craftsman utility trailer for $1500.00, a 3 HP Craftsman air compressor with 30 gallon tank, a milling machine and a surface grinder. It is the defendant's claim that these items were sold for amounts substantially less than they were worth. The plaintiff was in desperate need of funds at this time. While this was an intentional violation of the court's order, the court, in view of the circumstances confronting the plaintiff, is not going to impose any punishment for the plaintiff's violation of that order.
Initially this matter was a contested custody case. It was referred to Family Relations for investigation. Family Relations completed their investigation on November 18, 1991 and that report is part of the file. On March 27 Attorney Gerard Adelman was appointed counsel for the minor children. At the commencement of the trial the parties presented a written stipulation on the issue of custody and visitation and Attorney Adelman was excused from participation in the trial. However, subsequent issues on visitation arose and on January 21, the court heard CT Page 1123 these issues and affirmed the previous orders entered on the parties' agreement. The court has ordered sole custody of the four minor children to the plaintiff and visitation in accordance with the parties' stipulation. The issue raised is the claim by the older child, Alicia, of sexual abuse by her father which he steadfastly denies, her emotional upset which has lasted for four years which may be a jealousy of her younger twin sisters and her eyebrow pulling and hair pulling. She was hospitalized from August 28, 1991 to October 14, 1991. The issue of visitation has been re-referred to Family Relations. In the meantime, visitation shall be as recommended by the Yale Child Study Center. Unless otherwise recommended, the visitation shall at a minimum be or alternating Saturdays from 10:00 a.m. to 3:00 p.m. and reasonable holiday visitation.
On January 20, 1991, the plaintiff's mother died. The plaintiff and her siblings will inherit monies from their mother's estate. The estate will be divided into four equal shares (see defendant's Exhibit 1) and it is anticipated that the plaintiff will receive approximately $15,000.00 when the house owned by the estate is finally sold.
Counsel for the minor children has filed a motion for counsel fees. That motion is granted. The court finds the total fees of $3,918.75 to be fair and reasonable; $2,000.00 of that amount has been paid. The remaining balance of $1,918.75 is to be paid; $1,000.00 by the defendant and $918.75 by the plaintiff; such sums to be paid to counsel for the children on or before September 1, 1992.
In the recent case of Blake v. Blake, 207 Conn. 217 at 230 (1988), our Supreme Court cited with approval the language of O'Neill v. O'Neill, 13 Conn. App. 300 at 311 (1988), in which our Appellate Court states as follows:
 A property division ought to accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage.
 We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities. CT Page 1124
The foregoing is a consideration in this case. Also to be considered with respect to alimony, support and a division of property is the following:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisition of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both equal and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530 (1980).
The court has considered all of the criteria of 46b-81,46b-82, and 46b-84 of the General Statutes together with all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234 (1982). Suffice to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding. Leo v. Leo, 197 Conn. 1, 5 (1985) and that the court need not give equal weight to each factor. Kane v. Parry, 24 Conn. App. 307,313-14 (1991)
As has been said by the Appellate Court in the recent case of Emanuelson v. Emanuelson, 26 Conn. App. 527, 530, 531 (1992):
 "General Statutes 46b-81(c) requires the trial court to evaluate certain factors before distributing the parties' assets in a marital dissolution action. Although the court must CT Page 1125 evaluate all the factors listed, it has broad discretion when applying the statutory factors to assign the parties' assets. O'Neill v. O'Neill, 13 Conn. App. 300, 312, 536 A.2d 978, Cert. denied 207 Conn. 806, 540 A.2d 374 (1988). . . . The statutory factors for determining alimony in 46b-82 are almost identical to the factors used to distribute property in 46b-81(c)."
The court, in addition to the foregoing findings, finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. There has been an irretrievable breakdown of the marriage.
4. The defendant is at fault for the breakdown of the marriage. The court enters the following orders:
1. The marriage of the parties shall be dissolved on the grounds of irretrievable breakdown of the marriage.
2. Sole custody of the four minor children shall be with the plaintiff.
3. The issue of visitation is re-referred to the Family Relations Division for further study. In the interim period visitation shall be in accordance with the written agreement of the parties contained in the file and as ordered by the court.
4. Each of the parties shall be fully supportive of each of the children, shall not denigrate or criticize the other party in the presence of the children or any one of them.
5. There shall be no confrontation between the parties in the presence of the children or any of them.
6. The defendant shall pay Attorney Adelman the sum of $1,000.00 as a contribution to his attorney's fees on or before September 1, 1992.
7. The plaintiff shall pay Attorney Adelman the sum of $918.75 as a contribution to his attorney's fees on or before September 1, 1992.
8. An assignment of the defendant's right, title and interest in and to the real property at 195 Mountain Brook Drive, Cheshire CT Page 1126 and Building Lot #9, Gaylord Mountain Road, Bethany is made pursuant to the provisions of 46b-81 of the General Statutes to the plaintiff.
9. The plaintiff's interest in the real property in Jackson, New York shall be wholly hers free of any claim or demand by the defendant.
10. The defendant shall pay to the plaintiff by way of alimony the sum of $1.00 per year terminable upon the earliest to occur of the following events: the death of either of the parties, the plaintiff's remarriage, or September 19, 2005, the date the youngest of the children reaches the age of eighteen (18) years.
11. The defendant shall indemnify and hold harmless the plaintiff from any debts, charges or liabilities incurred by him without the plaintiff's express consent or for her benefit or that of the children prior to the date hereof for which the plaintiff may be jointly liable.
12. The defendant shall pay to the plaintiff by way of support one half of his unemployment compensation. At such time as he has any income he shall pay support in accordance with the Family Support guidelines. He shall advise the plaintiff within forty-eight (48) hours of his obtaining employment, advise the amount of salary or wages he shall receive and shall furnish suitable proof of the amount of the same within two (2) weeks of his employment (i.e. copy of pay stub, notarized letter of employer, or certified copy of contract of employment).
13. The defendant shall provide counsel for the plaintiff with a monthly statement under oath concerning his efforts to obtain employment.
14. The defendant shall maintain such medical and hospital insurance as he has available through any employment for the benefit of the minor children. Any uninsured or unreimbursed medical or dental expenses incurred for the minor children shall be shared equally by the parties. The plaintiff shall have the benefit of the provisions of 46b-84(c) of the General Statutes.
15. The defendant shall maintain such life insurance as he may have available through any employment naming the four minor children as irrevocable first beneficiaries thereof in equal shares for as long as he is obligated to pay support. In the event such life insurance is not available to the defendant through his employment to a minimum payable upon death value CT Page 1127 of at least One Hundred Thousand ($100,000.00) Dollars, the defendant shall obtain life insurance coverage to supplement his employer's coverage up to that amount. This shall become effective only upon the defendant's employment. Should the defendant's physical condition require a rated premium for such supplemental insurance coverage, this provision of the judgment shall be re-examined.
16. The tangible personal property set forth in Exhibit 1 of the defendant's "Prayer For Relief" dated January 16, 1992 and filed January 21, 1992 shall be the property of the defendant free of any claim or demand by the plaintiff except for the Echo 3/4 H.P. leaf blower, Echo 1/2 H.P. line trimmer, Craftsman gas powered edger and Jacobson 3 H.P. lawn mower which shall be the plaintiff's free of any claim or demand by the defendant. The hardcover books which were the defendant's prior to marriage shall be his. Those purchased subsequent to the marriage shall be divided equally between the parties. The plaintiff shall not be responsible for those items in Exhibit 1 which are unable to be found. She shall not however dispose of any of such items between the date hereof and the defendant's removal of such items from the residence at 195 Mountain Brook Drive. Such items shall be removed within ninety (90) days of the date hereof.
17. Those items of tangible personal property listed in Exhibit 2 of the defendant's "Prayer For Relief" reported as "Assets of Mr. Edward Thiede, Sr." shall be removed from the premises at 195 Mountain Brook Drive also within ninety (90) days of the date hereof free of any claim or demand by the plaintiff. The plaintiff shall not be accountable for any of such property and shall not dispose of any of such items between the date hereof and the defendant's removal of such items.
18. Those items of tangible personal property listed on Exhibit 3 of the defendant's "Prayer For Relief," except for the first five items which have been disposed of and the MTD 5 HP Air Blower and MTD 22" Rotary Lawn Mower, shall be the property of the defendant free of any claim or demand by the plaintiff. The MTD 5 HP Air Blower and the MTD 22" Rotary lawnmower shall be the property of the plaintiff free of any claim or demand by the defendant. The RCA Camcorder outfit shall be available to the plaintiff for her use whenever she chooses and at such time as the defendant no longer wishes to retain it, he shall deliver it to the plaintiff and the same shall be hers free of any claim or demand by him. The plaintiff shall have her choice of all VCR tapes. The defendant may copy and tapes which he may desire at his expense. As before, such property of the defendant shall be removed by him within ninety (90) days of the date hereof. The plaintiff shall not CT Page 1128 be accountable for any items listed on Exhibit 3 and shall not dispose of any of such items between the date hereof and the date of their removal from the premises.
19. Those items of tangible personal property listed on Exhibit 4 of the defendant's "Prayer For Relief" as follows shall be the property of the defendant free of any claim or demand by the plaintiff: antique sled in family room, Kirby pants presser, roll top desk and swivel chair and Panasonic VCR. In addition the defendant's personal effects and clothing shall be his free of any claim or demand by the plaintiff. Those so-called "Pre-Marital Items" acceptable to the plaintiff shall be the defendant's. The parties shall endeavor to divide the family pictures. Duplicates, if necessary, shall be made at the defendant's expense. Those other items listed on Exhibit 4, except as the plaintiff may agree, shall be the property of the plaintiff free of any claim or demand by the defendant.
20. All other items of tangible personal property at 195 Mountain Brook Drive in Cheshire shall be the property of the plaintiff free of any claim or demand by the defendant.
21. Each party shall pay his or her own attorney's fees.
22. The plaintiff shall have restored to her her maiden name of Harriette M. Buckman.
Orders shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE