[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On August 12, 1994, the plaintiff, Jan Weinberg, appearing pro se, filed a complaint in eight counts against eighty-two of the officers and directors of CIGNA Corporation (CIGNA), collectively referred to herein as the defendants, for their alleged wrongful refusal to settle his claim against Management Company Entertainment Group, Inc. (MCEG). Specifically, the plaintiff alleges that the defendants are the officers and directors of CIGNA, that CIGNA Insurance Company (CIC) is a wholly owned subsidiary of CIGNA, and that at all relevant times CIGNA and CIC have been "completely dominated by the defendants, who, as officers and directors of CIGNA, completely control the finances and business practices of CIGNA and CIC. By virtue of their positions as officers or directors of CIGNA, these defendants are liable for the claims herein because they have either expressly directed CIGNA and CIC to take the actions CT Page 4849 complained of herein, or they have consented to, approved and knowingly ratified such activities . . . these defendants have knowingly, intentionally and maliciously directed CIGNA and CIC to engage in the unfair and unlawful conduct alleged herein."
The plaintiff alleges that on or about December 31, 1987, he and his partner agreed to sell 90% of the common shares of Forum Home Video Corp. (Forum) to MCEG. In return, the plaintiff received a new issue of 200 preferred shares of Forum, the option to purchase 210,000 shares of common stock of MCEG, and the right to "put" his preferred shares to MCEG at a future date. On December 31, 1988, the plaintiff alleges that he entered into a second written agreement with MCEG pursuant to which MCEG agreed to purchase controlling interest in eleven companies known as the "Pickwick Companies", that were owned by the plaintiff, for consideration of $10 million, and other promises allegedly made by MCEG. The plaintiff further alleges that MCEG removed assets from Forum, and transferred all of Forum's business and assets into MCEG's subsidiary, Virgin Vision Lit. (Virgin), which rendered Forum a dormant, non-operating entity, and caused MCEG and Forum to breach their agreements with the plaintiff.
The plaintiff alleges that in 1989, CIC issued a "Directors and Officers Liability and Company Reimbursement Policy #DO-012679" (the policy) to MCEG for the period August 1, 1989 to January 31, 1991, which provided that CIC would pay for losses incurred by the directors and officers of MCEG in connection with claims made against them for specific wrongful acts that were first made during the policy period. The plaintiff claims that on or about July 6, 1990, within the policy period, he made a claim against the officers and directors in the United States District Court for the Southern District of New York. The plaintiff alleges that instead of settling his claims against the directors and officers of MCEG, CIC and CIGNA filed an adversary proceeding in bankruptcy court in California where MCEG had filed a bankruptcy action, in order to enjoin him from pursuing his claims.
The plaintiff alleges that in April, 1992, CIC and CIGNA commenced an action in California Superior Court seeking a judgment declaring that the policy was void from its inception, and that he was not provided with notice of this action until one year later. The plaintiff alleges that CIC, CIGNA and MCEG then conspired to exchange documents releasing each other from any further liability on the policy. The plaintiff claims that CIC, CT Page 4850 CIGNA, MCEG and the defendants have "intentionally, deliberately and maliciously conspired to rescind the Policy with the intent of preventing the plaintiff from ever recovering any of the proceeds of said Policy."
The plaintiff further alleges that in August, 1992, he commenced an action against CIGNA and CIC in Federal District Court for the District of Connecticut. The plaintiff alleges that at the court ordered settlement conferences the defendants, by counsel, continued to act in bad faith by making misrepresentations, as well as by having the plaintiff stalked by a former secret service agent employed by CIGNA. The plaintiff claims that since his commencement of the federal action in Connecticut, he has not been allowed to propose a resolution at the annual shareholders meeting of CIGNA, even though he was a shareholder at the time and substantially complied with the requirements for introducing a resolution.
Finally, the plaintiff alleges that "[a]s a result of the complete domination and control of CIGNA and CIC by these defendants, CIGNA and CIC have no separate mind, will or existence of their own. Moreover, there is such a unity of interest between the defendants and CIGNA and CIC that it would defeat both equity and justice to recognize the fiction of separate identities between the defendants and CIGNA and CIC. Accordingly, the corporate structure or `veil' of CIGNA and CIC should be disregarded and these defendants, who control the finances and business practices of CIGNA and CIC, should be held liable for all of the damages suffered by the plaintiff on account of the conduct of CIGNA and CIC alleged herein."
Based upon these allegations, the plaintiff has asserted claims for: violation of the Connecticut Unfair Insurance Practices Act (CUIPA); tortious breach of contract; violation of the Connecticut Unfair Trade Practices Act (CUTPA); civil conspiracy; common law bad faith; intentional infliction of emotional distress; negligent infliction of emotional distress; and violation of the plaintiff's civil rights.
On September 28, 1994, the defendants filed a motion to strike the plaintiff's complaint on the ground that it is insufficient as a matter of law. The defendants also filed a memorandum of law with supporting documents. On November 17, 1994, the plaintiff filed a memorandum of law, with supporting documents, in opposition to the defendants' motion to strike. On CT Page 4851 December 2, 1994, and February 10, 1995, the defendants filed reply and supplemental memoranda with supporting documents, in support of their motion to strike.
In accordance with Practice Book § 152 a party may contest the legal sufficiency of a complaint by filing a motion to strike the count. See Novametrix Medical Systems v. BOC Group,Inc., 224 Conn. 210, 214-15, 618 A.2d 25 (1992). If a motion to strike is directed to an entire complaint, the motion should be denied if any of the plaintiff's claims are legally sufficient.Doyle v. AP Realty, Corp., 36 Conn. Sup. 126, 127, 414 A.2d 204
(Super.Ct. 1980). In considering a motion to strike, the court is limited to the grounds specified in the motion to strike.Blancato v. Feldspar Corp., 203 Conn. 34, 44, 522 A.2d 1235
(1987); Kopsick v. Yale University, 6 Conn. L. Rptr. 895 (June 24, 1992, Maiocco, J.), quoting Meredith v. Police Commissionerof Town of New Canaan, 182 Conn. 138, 438 A.2d 27 (1980).
"In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. . . . The court must construe the facts in the complaint most favorably to the plaintiff." Gordonv. Bridgeport Housing Authority, 208 Conn. 161, 170,544 A.2d 1185 (1988). The facts to be considered by the court on a motion to strike include the facts that are implied and fairly provable under the allegations, however, the court may not consider the legal conclusions or opinions stated in the complaint. WestportBank Trust Co. v. Corcoran, Mallin Aresco, 221 Conn. 490,495, 605 A.2d 862 (1992); see also Liljedahl Bros., Inc. v.Grigsby, 215 Conn. 345, 348, 576 A.2d 149 (1990).[1]
The defendants contend that the plaintiff's complaint should be stricken in its entirety on the ground that the plaintiff has failed to allege facts that are sufficient to "pierce the corporate veil" under any alleged theory of recovery. The defendants further argue that the motion to strike should be granted because the plaintiff has failed to show that he has standing to sue the defendants under either CUIPA or CUTPA or any common law theory.[2]
"To hold a corporate officer personally liable for wrongdoing, there must be a sufficient factual basis for a court to pierce the corporate veil. . . . The piercing of the corporate veil is equitable in nature. . . . When the statutory privilege of doing business in the corporate form is employed as a cloak for the evasion of obligations, as a mask behind which to do CT Page 4852 injustice, or invoked to subvert equity, the separate personality of the corporation will be disregarded." (Citations omitted; internal quotation marks omitted.) United Electrical Contractors,Inc. v. Progress Builders, Inc., 26 Conn. App. 749, 755,603 A.2d 1190 (1992).
"The corporate veil will be pierced when `the corporate entity has been so controlled and dominated that justice requires liability to be imposed on the real actor.'" Id.
 Under Connecticut law, the corporate veil may be pierced under either the instrumentality or identity rules. Under the instrumentality rule, in any case but that of express agency, proof of three elements is required: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest, or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.
(Internal quotation marks omitted.) Id., 755-56; see alsoCampianso v. Nardi, 212 Conn. 282, 291-92, 562 A.2d 1 (1989).
"It is clear that the key factor in any decision to disregard the separate corporate entity is the element of control or influence exercised by the individual sought to be held liable over corporate affairs." Angelo Tomasso, Inc. v. ArmorConstruction Paving, Inc., 187 Conn. 544, 556-57, 447 A.2d 406
(1982).
Alternatively, under the identity rule the plaintiff must "show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, [such that] an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise." (Internal quotations omitted.) Id., 559-60. CT Page 4853 "The identity rule primarily applies to prevent injustice in the situation where two corporations are, in reality, controlled as one enterprise because of the existence of common owners, officers, directors or shareholders and because of the lack of observance of corporate formalities between the two entities." Id., 560. "Although the `identity' or `alter ego' doctrine has been primarily applied to reach beyond the veil to another corporation, it may also be employed to hold an individual liable." Klopp v. Thermal-Sash, Inc., 13 Conn. App. 87, 89 n. 3,534 A.2d 907 (1987); Saphir v. Neustadt, 177 Conn. 191, 209-210,413 A.2d 843 (1979); Zaist v. Olson, 154 Conn. 563, 575,227 A.2d 562 (1967); Falcone v. Night Watchman, Inc., 11 Conn. App. 218,221, 526 A.2d 550 (1987).
The defendants rely upon Regulbuto v. General HealthManagement, Inc., 3 Conn. L. Rptr. 686 (January 29, 1991, Clark, J.), for support of their contention that the plaintiff has failed to allege sufficient facts to pierce the corporate veil and hold the defendant officers and directors personally liable. In Regulbuto, the plaintiff brought an action against the defendant corporation, and the individual defendant, Mark Steiner, the majority and/or sole stockholder of the defendant corporation, in regard to the plaintiff's termination from employment. The individual defendant argued that the plaintiff's claims against him should be stricken because the plaintiff had failed to allege sufficient facts to pierce the corporate veil and hold him personally responsible for the conduct of the corporate defendant. Id., 687.
Specifically, the plaintiff alleged that "[t]he individual defendant is the majority and/or sole stockholder of the defendant corporation and the defendant corporation owns all of the stock of its subsidiary corporations. The individual defendant controls and dominates the business affairs and decision making of the defendant corporation and its subsidiaries thereby depriving the defendant corporation and its subsidiaries of an independent will or existence." Id., 688. The court held that the plaintiff's allegations were "merely conclusions of law with insufficient facts to support them." Id. Accordingly, the court granted the motion to strike as to the plaintiff's claims against the individual defendant because the plaintiff had failed to allege facts necessary to "satisfy the first element of the instrumentality rule, control: and therefore, the plaintiff had failed to allege facts necessary to pierce the corporate veil and hold the individual defendant personally liable. Id. CT Page 4854
In the present action, the plaintiff has alleged that: the defendant officers and directors "completely control the finances and business practices of CIGNA and CIC;" "CIGNA and CIC have no separate mind, will or existence of their own;" "there is such a unity of interest between the defendants and CIGNA and CIC that it would defeat both equity and justice to recognize the fiction of separate identities between the defendants and CIGNA and CIC;" and "[a]ccordingly, the corporate structure or `veil' of CIGNA and CIC should be disregarded and these defendants, who control the finances and business practices of CIGNA and CIC, should be held liable for all of the damages suffered by the plaintiff on account of the conduct of CIGNA and CIC."
These allegations by the plaintiff are simply legal conclusions and legal argument, and that the plaintiff has failed to allege any independent facts demonstrating the requisite control necessary to pierce the corporate veils of CIC and CIGNA, under either the instrumentality or identity rules. See UnitedElectrical Contractors, Inc. v. Progress Builders, Inc., supra,26 Conn. App. 755-56; Regulbuto v. General Health Management,Inc., sura [supra], 3 Conn. L. Rptr. 688. The plaintiff has failed to allege a sufficient fact basis to pierce the corporate veil of CIGNA and CIC, as is required to hold the defendants, the individual officers and directors, liable for the actions of the corporations.
Nevertheless, in opposition to the motion to strike, the plaintiff argues that the liability of the defendants in this action is not contingent upon the piercing of the corporate veil because the focus of this action is the wrongful and tortious activities of the "individual" defendants, for which the individual defendants are personally liable. In support of this argument, the plaintiff relies upon Scribner v. O'Brien, Inc.,169 Conn. 389, 404, 363 A.2d 160 (1975), wherein the court affirmed the trial court's finding that the individual defendant, the president of the co-defendant corporation, was individually liable to the plaintiffs for his negligence in the construction of the dwelling and driveway. In the present case, the plaintiff's complaint contains allegations with regard to actions and conduct of CIGNA and CIC, and not the action or conduct of the individual defendants. The plaintiff's reliance upon Scribnerv. O'Brien, Inc., supra, is misplaced.
For the reasons stated herein, the plaintiff has failed to CT Page 4855 allege sufficient facts to pierce the corporate veil of CIGNA and CIC, and hold the individual defendants liable for the actions of the corporations. Therefore, the plaintiff's complaint against the individual directors and officers is stricken in its entirety.
KARAZIN, J.