[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case comes to this court as a court trial. The plaintiff brought a complaint in four counts. The fourth count was withdrawn in open court on January 6, 1995. The first count essentially alleges a contract. The second count alleges a note. The third count alleges unjust enrichment. The defendants who were pro se at the time filed an amended answer and special defense on November 21, 1991 and that consisted of six special defenses. The third special defense and the sixth special defense were withdrawn and the first, second, fourth and fifth special defenses were the ones that were proceeded on. There is an attempt by the defendants to file a counterclaim on December 10, 1991 without permission of the court. There is no indication that was a proper pleading and approved by the court as being filed out of order. In fact, however, the reply filed by the plaintiff' answers the counterclaim. The court will address further the counterclaim. In any event, the counterclaim and the special defenses were denied. CT Page 8029
When the case came to this court there was some question of recusal by the judge. The parties were made aware of the problem with a non-party to the action, but a shareholder in the corporation involved in this lawsuit. The parties stipulated on January 10, 1995 in open court and in a writing made part of the file, that the judge need not recuse himself. This writing complies with Section 51-39(c) of the General Statutes concerning recusal.
At the conclusion of the trial the court raised the issue with the parties as to whether or not the suit was premature since the due date on the note did not appear to be reached. Thereafter, on January 31, 1995, the plaintiff attempted to withdraw the action. There was an objection. This led to a stipulation of the parties dated March 13, 1995 which indicated that there was a demand and that for the purposes of this litigation the note sued upon the ten year period shall be treated as having expired. The parties also stipulated that the plaintiff's brief was to be filed by March 17th and the court would then have 120 days from March 17, 1995 to write the decision.
FACTS
The court finds the following facts. In 1987 the defendant Michel Margueron founded a corporation known as New Canaan Properties Limited for the purpose of purchasing existing residences and reselling after remodeling and upgrading them. Exhibit A lays out the structure of the corporation and indicates the other shareholders, which included people by the name of Bates, Hirschler and Techno Design, the officers of the corporation and the total liabilities and shareholders equity. The defendants invested $350,000.00 in New Canaan Properties Limited. The funding was obtained from two mortgages on their personal residence behind an existing first mortgage which was used to purchase the home originally.
Thereafter, New Canaan Properties Limited entered into an agreement with the plaintiff to provide architectural and managerial services for developing the properties purchased by New Canaan Properties Limited. The defendant Merrill Margueron did interior decorating work for the projects and often would meet with the plaintiff, Boris Pogacnik on the site. She viewed on several occasions arguments between the plaintiff and some of the workers on the site. In one instance she observed the plaintiff and another person an electrician actually involved in a pushing and CT Page 8030 shoving match.
On October 13, 1988, the plaintiff made an investment with the corporation as shown on Exhibit D in the sum of $10,000.00. It is clear to this court that he knew that he was dealing with a corporation.
The properties purchased by New Canaan Properties were 570 West Road, 568 West Road and 43 Bayberry Road, all in New Canaan, Connecticut.
The duties of the plaintiff were to design the houses, to develop working plans and obtain the permits and to advise and consult on the scene. Plaintiff never took legal action against any of the shareholders. It is clear that services were always provided to New Canaan Properties. The services were architectural services for services rendered in 1987 and 1988.
The last work performed by the plaintiff on 568 West Road was on October 2, 1988. The last work performed by the plaintiff on 570 West Road was December 9, 1988. The last work performed by the plaintiff on 43 Bayberry Road was on December 2, 1988. See Defendants' Exhibits 2 and 3 which lay out the facts.
A Certificate of Occupancy was issued for 570 West Road, New Canaan on December 6, 1988. See Defendants' Exhibit 4. A certificate of Occupancy was issued for 43 Bayberry Road, New Canaan on October 17, 1988. See Defendants' Exhibit 5. A certificate of Occupancy was issued for 568 West Road on December 13, 1988. See Defendants' Exhibit 6.
The concept of the corporation was to acquire annually six or seven well established residential estates in New Canaan, Darien and Wilton. The ideal was to invest on average, 30% of the acquisition price in refurbishing and improving the property before selling within a ten month period from the date of purchase. The projects ran into financial difficulty as a result of the underestimation of project cost and a change in the real estate market. Michel Margueron put money into the projects and attempted to do a refinancing with First Constitution Bank. The loan commitment was for $1,522,500.00 as shown on Exhibit 7. The refinancing was scheduled to take place on December 13, 1988. In fact, the closing had progressed to the point where Attorney Edward G. Mellick had the proceeds check in his possession and they were preparing to close the loan. See Exhibit 10. The closing never CT Page 8031 took place.
The defendant Michel Margueron did a foolish thing in contemplation of the closing. He issued checks to his workers. At one point they had 31 people employed. The checks were issued to the subs and the workers approximately 17 or 18 of them. When the closing didn't take place and the checks were presented for payment, they were dishonored. The workers then began what was described by the defendants as a seizure of the defendants house, which began about 1:00 p. m. on December 13, 1988. The workers were furious. They proceeded to make visits to Margueron's personal residence.
An independent observer and neighbor, one Peter Underhill testified that lots of parked vehicles and pickup trucks were at the premises. He jogs every day and saw seven through ten vehicles there on a regular basis on the week before Christmas.
They were workers from Louisiana in major part. They were there from 7:00 a.m. until 7:00 or 8:00 p. m. They were there on the 13th, 14th and the 15th through the 19th. They demanded food and drinks and harassed the Marguerons. Several items in the Marguerons' house were broken by the workers and tools were taken from the Garage. One worker grabbed Michel Margueron by the neck and threatened to kill him when his wife had left to get groceries.
During this approximate two weeks siege by the workers, the plaintiff visited the Marguerons in the evening when the workers had gone. The defendants explained to the plaintiff the problems they were having with the workers. The plaintiff indicated he needed something from the Marguerons concerning the payment he was owed from New Canaan Properties Ltd. The Marguerons typed up a letter which was unsigned and left in the mailbox on December 14. The plaintiff picked up the letter on December 14th and visited the Marguerons later that evening. He indicated that the letter was not good enough and wanted a promissory note signed which he brought with him that night. The letter that was signed by the Marguerons was more of a discussion of the problems than any kind of an agreement. It laid out that they would attempt to pay him if he was unable to collect money from the other shareholders through legal action. (The court was not presented with any evidence concerning any other legal actions with any of the other shareholders.) It also discussed the possible total financial ruin of the defendants. CT Page 8032
It is clear to this court that based on that letter, the plaintiff felt that he did not have an enforceable agreement and asked them to sign a promissory note. The plaintiff prepared the promissory note dated December 15th which is Defendant's Exhibit 1. On December 19th the defendant Michel Margueron signed the promissory note.
From December 15, 1988 to December 19, 1988, the workers continued their siege at the Margueron's residence and the plaintiff continued to visit the Marguerons almost every night or at least call them to harass them into signing a promissory note and repeating his threat of revenge on several occasions. The defendants were under great stress and duress during the period of time from December 14 through December 19, 1988 when the two documents were signed. The plaintiff put pressure on the defendants. He banged on the furniture. He told them that, "they should not under estimate the power of his revenge." The defendants were afraid that the revenge was the violence they had seen with the electrician. The defendant's wife was present during the threats. After the threats Michel Margueron agreed to sign the promissory note. Merrill Margueron typed the new note using the same language from the December 15, 1988 note. While he was signing the note, Michel Margueron indicated both before and after the signing that he was forced to sign under duress and there was no value or consideration given by the plaintiff for the note. See Plaintiff's Exhibit C. The defendant Michel Margueron remained constant in his claim of no consideration and non-legal responsibility, all as set forth in Defendants' Exhibit 8 a letter to the plaintiff.
The plaintiff was unable to satisfy this court as to what "for value received" meant as set forth in the promissory note. It is clear that he believed that he should be paid, but what consideration there was, was never clearly articulated. It is clear that at the time the note was signed, no consideration passed. On December 22nd the last of the Louisiana's workers went back home.
The plaintiff discussed with the defendants, the fact that the letter of December 14th, Exhibit B, was shown to his attorney and to his wife and was told that it had no legal value. He thus wanted the promissory signed. He made statements that indicated that he had some control over the Louisiana workers which led the defendants to believe that he could make it more problemsome for them if they did not cooperate with him. The defendant Merrill CT Page 8033 Margueron indicated that the note was signed to eliminate the threats. She asked her husband to sign the note to get rid of one source of the duress. Exhibit B was signed in the dining room on the dining room table and was basically done to say that if the defendant got anything, he would get something. The plaintiff knew that the workers were at the house creating the problems. The husband said that there was no value received and that Boris Pogacnik had never done any work for them, as he was signing the note. The statements the plaintiff made scared the defendant Merrill Marugeron and still scare her. The reason the police were not called is that the defendants were afraid that if they were called concerning the occupancy of the premises by the Louisiana workers that they would have the husband arrested for bad checks.
LAW
1. Duress
In this case, this court is of the opinion that the issue of duress is dispositive of this case. The court will further address the question of consideration after the discussion of duress.
For a contract (or note) to be valid, it must have been freely entered into. McCarthy v. Taniska, 84 Conn. 377, 381 (1911). A contract therefore is not valid if one party is put in fear by the other party for the purpose of obtaining an advantage over him. The court in McCarthy laid out the rule as follows on page 381:
 "A contract in order to be valid must be the result of the free assent of the parties making it. The test in determining whether there was duress, is not so much the means by which the party was compelled to execute the contract, as it is the state of mind induced by the means employed, the fear which made it impossible to exercise his own free will. . . . It is said: "The making of contract requires the free exercise of the willpower of the contracting parties, and the free meeting and blending of their minds. In the absence of that, the essential of a contract is wanting; and if such absence be produced by the wrongful conduct of one party to the transaction, or conduct for which he is responsible, whereby the other party for the time being, through fear, is bereft of his free willpower, for the purpose of obtaining the contract, and it is thereby obtained, such contract may be avoided on the ground of duress. There CT Page 8034 is no legal standard of resistance which a party so circumstanced must exercise at his peril to protect himself. The question in each case, Was the alleged injured person by being put in fear by the other party to the transaction for the purpose of obtaining an advantage over him, deprived of the free exercise of his willpower, and was such advantage thereby obtained? If the proposition be determined in the affirmative, no matter what the nature of the threatened injury to such person, or his property, or the person or liberty of his wife or child, the advantage thereby obtained cannot be retained."
This court finds that based on the facts found, the defendants were put in sufficient fear that they were deprived of the exercise of their free will and advantage was obtained over them. It is clear from the facts recited among other things, that they were placed in physical fear of the plaintiff and at the time they signed the documents, they recited the fact that the documents were not valid and binding on them. That there was no consideration for the signing. In Jenks v. Jenks, 232 Conn. 750, 753 (1995), the court stated that for a court to conclude that a judgment resulted from duress, the finder must determine that the misconduct of one party induced the party seeking to avoid the judgment to manifest assent thereto, not as an exercise of the parties' fee will, but because the party had no reasonable alternative in light of the circumstances as that party perceived them to be. The appeals court in that case made a factual determination that although the evidentiary record was sparse, it was sufficient to sustain the trial court's finding of duress. In that case, there was discussion in a divorce matter concerning mind games and there was in that case little contact between the parties before the pretrial and the stipulated judgment. In the instant case, the incidents of duress were taking place immediately before, during and after the signing of the documents as well as a disclaimer by the defendants of the validity of the note and the agreement.
2. Consideration
It is clear that the general rule is that past services will not constitute a sufficient consideration for an executory promise . . . Osborne v. Locke Steel Chain Company, 153 Conn. 527,533 (1966).
The court finds that based on the facts found that the CT Page 8035 services were provided for the corporation and not the individuals. As previously stated Exhibit A gave the financial structure of the company and these defendants were only apart of the corporation as officers and shareholders.
Generally a shareholder is not liable for the debts of the corporation. Only when the corporate veil is pierced will that responsibility lie and there has been no proof either under the instrumentality or identity rules that the corporate veil could have been pierced in this case. See Falcone v. Night WatchmenInc., 11 Conn. App. 218, 221 (1987).
In this case the defendants do not contest their execution of the note. They do not the deny the contents of it. They argue rather that the note and contract were unenforceable as a matter of law for lack of consideration. The court finds that the plaintiff has failed to prove adequate consideration for the note and contract.
3. Unjust enrichment
The plaintiff has failed to sustain his burden that the defendants have been unjustly enriched. The three requirements of unjust enrichment are' (1) that the defendants were benefited; (2) that the defendants unjustly did not pay the plaintiffs for the benefits and (3) that the failure of payment was to the plaintiff's detriment.
As to requirement 1, it is only New Canaan Properties Ltd. that received benefits from the plaintiff. The defendants themselves did not directly receive any benefit from the plaintiff. As to requirement 2, there is no unjust nonpayment. The defendants did not personally owe the plaintiff any money.
4. Duress
The court finds for the reasons set forth above that the defendants have proven by a preponderance of the evidence their claim of duress in the making of the note and contract (Exhibits B and C) and therefore they are invalid.
The court finds that the counterclaim of the defendant's is not properly before the court since it was never given permission to be filed. In any event, the court finds that the defendant has failed to prove by a preponderance of the evidence the claim of an CT Page 8036 unfair trade practice. The court further notes that this issue was not briefed by the defendants in their brief and, therefore, the court further considers the issue abandoned by the defendants for failure to brief the issue.
For all of the foregoing, judgment enters in favor of the defendants on the special defense of duress and against the plaintiff on the complaint.
So Ordered
KARAZIN, J.