[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTIONS TO STRIKE
Plaintiff Margaret Staiger initially filed a complaint on June 24, 1993, alleging that she was injured when she purchased "Units" of a limited partnership. The plaintiff's third revised complaint (revised complaint) filed on May 15, 1995, contains eleven counts. The defendants are Bentley Mortgage Corporation (Bentley Mortgage); Bentley Mortgage Preferred Partners (BMPP); Equity Mortgage, Inc. (Equity); W. Charles Arbo (Arbo); Mark S. CT Page 12239 Germain (Germain); Frank Mako (Mako); and Anthony Maresca (Maresca).
The plaintiff alleges in her revised complaint that BMPP was a limited partnership organized by all of the defendants to make and organize loans to be made to affiliated persons and entities. The plaintiff alleges that Bentley Mortgage is the general partner of BMPP, and that Bentley Mortgage provided her with allegedly fraudulent advertisements, brochures and an Offering Memorandum. The plaintiff consequently purchased 3500 Units of BMPP on October 2, 1989. The plaintiff alleges that BMPP purchased risky loans from Equity with the approval of Bentley Mortgage. The plaintiff also alleges that Bentley commingled the funds of BMPP with other entities including Equity and that Maresca was a director or employee of Bentley Mortgage.
The first, second and third counts of the revised complaint are allegations of fraudulent misrepresentation, negligent misrepresentation and common law fraud by the defendant Bentley Mortgage. The fourth count alleges breach of fiduciary duty through waste, mismanagement and breach of contract by all defendants. The fifth count alleges breach of contract by Bentley Mortgage. The sixth count alleges a violation of the Connecticut Uniform Securities Act (CUSA) General Statutes (Rev. to 1989) §§ 36-472 (now § 36b-4) and 36-498 (now § 36b-29) by Bentley Mortgage.[1] The seventh count alleges a violation of §§ 36-472 and 36-498 by Arbo, Germain, Mako and Maresca. The eighth count alleges a violation of RICO pursuant to 18 U.S.C. § 1962
(c) by all of the defendants. The ninth count seeks a piercing of the corporate veil of Bentley Mortgage. The tenth count requests dissolution of BMPP. The eleventh count seeks the appointment of a receiver of BMPP.
Equity has filed a motion to strike counts four, eight, nine, ten and eleven for failure to state a claim upon which relief may be granted. Maresca has moved to strike counts seven, eight, ten and eleven for failure to state a claim upon which relief may be granted.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Peter-Michael, Inc. v. Sea ShellAssociates, 244 Conn. 269, 270, 709 A.2d 558 (1998). "In ruling CT Page 12240 on a motion to strike, the court is limited to the facts alleged in the complaint." Faulkner v. United Technologies Corporation,240 Conn. 576, 580, 693 A.2d 293 (1997). The court "must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.)Peter-Michael. Inc. v. Sea Shell Associates, supra, 270-71. "Moreover, . . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged." (Citations omitted.) Pamela B. v.Ment, 244 Conn. 296, 308, 709 A.2d 1089 (1998).
I. Count Four
Equity moves to strike the fourth count of the plaintiff's complaint for failure to state a claim upon which relief may be granted. The plaintiff alleges in the fourth count that Equity and the other defendants breached their fiduciary duties.
"Connecticut courts have specifically refused to define a fiduciary relationship in precise detail and in such a manner as to exclude new situations." Southbridge Associates v. Garofalo,53 Conn. App. 11, 18, 728 A.2d 1114, cert. denied, 249 Conn. 919, ___ A.2d ___ (1999). Instead, "[a] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him." Murphy v. Wakelee,247 Conn. 396, 400, 721 A.2d 1181 (1998).
In the fourth count, the plaintiff sufficiently alleges that Bentley Mortgage owes her a fiduciary duty as the general partner of BMPP. The plaintiff, however, does not allege in her complaint that the defendant, Equity, owed her a fiduciary duty. The plaintiff has alleged that Equity organized BMPP, along with the other defendants, has not alleged a relationship with Equity characterized by a unique degree of trust and confidence. The plaintiff also has not alleged that Equity had a duty to represent the interests of the plaintiff. Accordingly, count four should be stricken as against the defendant Equity because the plaintiff has not sufficiently alleged that Equity owes her a fiduciary duty. CT Page 12241
II. Count Seven
The defendant, Maresca, asks the court to strike the seventh count against him because the plaintiff has not alleged a claim upon which relief may be granted pursuant to CUSA General Statutes (Rev. to 1989) §§ 36-472[2] and 36-498 (c)[3]. The plaintiff alleges in the seventh count that all of the individual defendants, Arbo, Mako, Germain, and Maresca, violated §§ 36-472 and 36-498 (c).
Maresca argues that he is not a person who may be held liable under § 36-498 (c) because this section does not allow aiding and abetting liability except for those in the status of employees, agents of broker-dealers and broker-dealers and Maresca is not an employee of BMPP, an agent of a broker-dealer or a broker dealer.
However, "[s]ection 36-498 (c) expressly creates two types of secondary liability for securities fraud: control person liability; and aiding and abetting liability. . . . Control persons such as partners, officers and directors logically fall under the control person heading. Employees, agents and broker-dealers logically fall under the aider and abettor heading because of the additional requirement in those sections that one materially aid in the act or transaction that constitutes the violation." (Citations omitted; emphasis added.) ConnecticutNational Bank v. Giacomi, 242 Conn. 17, 61, 699 A.2d 101 (1997).
Contrary to Maresca's assertion, the plaintiff not only alleges that Maresca aided and abetted under § 36-498 (c); the plaintiff also alleges control person liability for Maresca pursuant to § 36-498 (c). The plaintiff alleges that Bentley Mortgage sold the Units to the plaintiff by means of untrue statements of material fact in the Offering Memorandum, correspondence, conversations, advertisements and brochures or by omitting facts which made the statements misleading. The plaintiff alleges that Maresca is a director for Bentley Mortgage, one of the types of persons who logically falls under the control person heading. Additionally, the plaintiff alleges that Maresca, directly or indirectly controlled Bentley Mortgage. Thus, the plaintiff has sufficiently plead a cause of action against Maresca for control person liability under § 36-498 (c) because it must be assumed for the technical purposes of this motion that Bentley Mortgage fraudulently sold the Units and that CT Page 12242 Maresca as a director of Bentley Mortgage controlled its actions.
The defendant, Maresca, also argues that the plaintiff does not state a cause of action with regard to § 36-472 because there is no private cause of action and no aiding and abetting liability under § 36-472. The defendant is correct in arguing that § 36-472 does not create a private cause of action. SeeChanoff v. U.S. Surgical Corp., 857 F. Sup. 1011, 1022, aff'd31 F.3d 66, cert. denied 513 U.S. 1058, 115 S.Ct. 667,130 L.Ed.2d 601 (D.Conn. 1994); Zuccarelli v. N. American Holding Corp.,
Superior Court, judicial district of Litchfield, Docket No. 054504 (April 2, 1991, Susco, J.). As previously mentioned, the plaintiff's allegation that Maresca violated § 36-498 (c) states a cause of action upon which relief may be granted. This allegation is contained in the same paragraph as the plaintiff's allegation that Maresca violated § 36-472. "A motion to strike does not lie to eliminate a part of a paragraph."Zuccarelli v. N. American Holding Corp., supra. Maresca's motion to strike the seventh count must be denied because a portion of the paragraph including the alleged violation of § 36-472 states a cause of action for which relief may be granted.
III. Count Eight
The defendants Equity and Maresca both move to strike the eighth count for failure to state a cause of action upon which relief may be granted. In the eighth count, the plaintiff asserts a private cause of action pursuant to 18 U.S.C. § 1964 for a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq. Specifically, the plaintiff claims that the defendants violated 18 U.S.C. § 1962
(c)[4].
The plaintiff asserts that BMPP constitutes a RICO enterprise. According to the revised complaint, all of the defendants participated in the conduct of BMPP through their control and influence over the day to day operations of BMPP and their participation in purchasing loans from Equity for approximately one year, between May, 1989 and April, 1990. The plaintiff asserts that the predicate acts by BMPP in establishing, marketing and selling the Units of BMPP were (a) mail fraud in violation of 18 U.S.C. § 1341 when mailing the Public Offering Statement, advertisements, brochures and correspondence, (1) wire fraud in violation of 18 U.S.C. § 1343
by using wires to sell the Units, and (c) CT Page 12243 fraudulent sales of securities in violation of CUSA, General Statutes §§ 36-472 and 36-498 (c). The plaintiff also asserts that BMPP committed further predicate acts by purchasing eighteen mortgages from Equity during the period of October 4, 1989 to April 4, 1990. The plaintiff has not stated what crimes BMPP committed by purchasing the loans.
Without delving into the complicated array of issues presented in a RICO claim, the court finds that the plaintiff has not stated a claim upon which relief may be granted under RICO because the plaintiff has not alleged a pattern of racketeering activity which is one of the elements necessary for a violation of 18 U.S.C. § 1962 (c).
A pattern of racketeering activity requires at least two acts of racketeering activity. 18 U.S.C. § 1961 (5). Additionally, the plaintiff must make a twofold showing "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern BellTelephone Co., 492 U.S. 229, 238, 109 S.Ct. 2893,106 L.Ed.2d 195 (1989). To prove that acts are related, the plaintiff must show that the criminal acts "have the same or similar [purpose], [result], participants, victims, or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated events." Id., 240. The plaintiff has alleged two or more criminal acts by the defendants, which, if proven true, would be related, thus satisfying the first prong of the test to meet the burden of showing a pattern of racketeering activity.
The plaintiff, however, has not alleged the second prong necessary to show a pattern of racketeering activity because she has not alleged facts sufficient to show continuous criminal activity." `Continuity' is both a closed and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. . . . A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated." H.J. Inc. v. Northwestern Bell Telephone Co.,
CT Page 12244 supra, 492 U.S. 241-42.
Courts have considered many factors in deciding whether a plaintiff has established continuity. For example, the United States Seventh Circuit Court of Appeals considers "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." J.D. MarshallIntern v. Redstart, Inc., 935 F.2d 815, 820 (7th Cir. 1991). InJ.D. Marshall Intern, the court determined that Redstart Inc.'s single scheme furthered by numerous acts of mail fraud and wire fraud over a 13 month period of time, which involved a single victim, and was predicated upon a single transaction, did not constitute a pattern of racketeering activity. Id., 820-21. See also, Edmonson Gallagher v. Alban Towers Tenants Assn,48 F.3d 1260, 1265 (D.C. Cir. 1995) (single scheme, directed at few victims, and resulting in a single distinct injury does not demonstrate a pattern of racketeering); Schlaifer Nance Co. v.Estate of Andy Warhol, 119 F.3d 91, 98 (2nd Cir. 1997) (courts must take care to ensure that the plaintiff does not artificially fragment a singular act into multiple acts simply to invoke RICO).
The plaintiff has not alleged facts that would indicate a continuing threat of criminal activity beyond April 1990. The plaintiff has alleged a single scheme of fraudulently selling Units of BMPP to the plaintiff, which spanned a period of about one year. The plaintiff states that the defendants established, marketed and sold BMPP Units to the defendant using mail fraud, wire fraud and violating CUSA. The plaintiff is the only victim alleged, and the only injury alleged was based on the plaintiff's purchase of the Units on October 2, 1989.
IV. Count Nine
The defendant, Equity, moves the court to strike the ninth count for failure to state a claim upon which relief may be granted. The ninth count of the revised complaint requests the court to pierce the corporate veil of the defendant, Bentley Mortgage.
"When the corporation is the mere alter ego, or business conduit of a person, it may be disregarded." De Leonardis v.Subway Sandwich Shops, Inc., 35 Conn. App. 353, 358,646 A.2d 230, cert. denied, 231 Conn. 925, 648 A.2d 162 (1994). "The CT Page 12245 corporate veil will be pierced when the corporate entity has been so controlled and dominated that justice requires liability to be imposed on the real actor. . . . Under Connecticut law, the corporate veil may be pierced under either the `instrumentality' or `identity' rules." (Citations omitted; internal quotation marks omitted.) United Electrical Contractors v. ProgressBuilders, 26 Conn. App. 749, 755, 603 A.2d 1190 (1992).
"The instrumentality rule requires, in any case but an express agency, proof of three elements: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respectto the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of. . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) Toshiba America Medical System v.Mobile Medical System, 53 Conn. App. 484, 489, ___ A.2d ___ (1999).
The court finds that the plaintiff has not sufficiently alleged that BMPP was the instrumentality of Equity. Contrary to the plaintiff's assertion in her memorandum of law in objection to Equity's motion to strike, the plaintiff has not alleged that Equity was in control and domination over Bentley Mortgage. The plaintiff alleges in the revised complaint that the individual defendants, Arbo, Germain, Mako, and Maresca, exercised control and domination over Bentley Mortgage, but the plaintiff does not make the same allegation with respect to Equity. The plaintiff alleges that Equity exercised control and influence over BMPP, not Bentley Mortgage. Thus, the plaintiff has not sufficiently alleged that Equity should be subject to liability through the piercing of Bentley Mortgage's corporate veil under the instrumentality rule.
The other rule that allows the piercing of the corporate veil, the identity rule, "has been stated as follows: If the plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of CT Page 12246 separate identity would serve only to defeat justice and equity of an operation conducted by one corporation for the benefit of the whole enterprise. . . . There must be such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal." (Citations omitted; emphasis in original; internal quotation marks omitted.)Toshiba America Medical System v. Mobile Medical System, supra,53 Conn. App. 489.
The court finds that the plaintiff has not asserted facts necessary to pierce the corporate veil under the identity rule. Specifically, the plaintiff has not alleged that there is a unity of interest and ownership between Equity and Bentley Mortgage where the independence of the corporations have in effect ceased or had never begun. Also, the plaintiff has not alleged that Equity has dominated Bentley Mortgage's finances, policies and practices such that Bentley Mortgage has no separate mind, will or existence of its own.
V. Counts Ten and Eleven
The defendants, Equity and Maresca, request the court to strike the tenth and eleventh counts for failure to state a claim upon which relief may be granted. The plaintiff asks the court to dissolve BMPP in the tenth count and requests the court to appoint a receiver for BMPP in the eleventh count.
The court has jurisdiction to dissolve a limited partnership such as BMPP upon application by a partner "whenever it is not reasonably practicable to carry on the business in conformity with the partnership agreement." General Statutes § 34-28b. The defendants and the plaintiff all refer to General Statutes § 34-70 in their memoranda supporting their positions with regard to the current motions to strike. Section 34-70 provided dissolution of a partnership, not a limited partnership, by judicial decree and was repealed in 1997. As BMPP is a limited partnership, § 34-28b is the statute applicable to the dissolution in this case.
The court also has jurisdiction to appoint a receiver of a partnership upon dissolution of a partnership when the parties cannot agree upon the disposition of the partnership property and the settlement of the affairs of the partnership if a partner applies pursuant to General Statutes § 52-509.[5]
CT Page 12247
Neither § 34-28b nor § 52-509 expressly provides a remedy against persons or business entities who are not partners in the partnership. The plaintiff alleges that BMPP was organized by all of the defendants. However, the plaintiff does not allege that the defendants, Equity or Maresca, are partners of BMPP. The plaintiff seems to imply that through Maresca's position as a director of BMPP's general partner, Bentley Mortgage, and because BMPP's assets are allegedly commingled with those of Equity, Maresca and Equity are interested parties in the dissolution of BMPP and the appointment of a receiver over BMPP. Since neither Equity nor Maresca are partners of BMPP, the court must grant the motions to strike counts ten and eleven with respect to Equity and Maresca for failure to state a claim upon which relief may be granted.
In conclusion, for the foregoing reasons Maresca's motion to strike is granted for count eight, ten and eleven and denied as to count seven; and Equity's motion to strike counts four, eight, nine, ten and eleven is granted in its entirety.
Clarance J. Jones, Judge