ETHEL ORKNEY *v.* HANOVER INSURANCE
COMPANY
(SC 15942)

Callahan, C. J., and Berdon, Norcott, Palmer and McDonald, Js.

---

Argued December 4, 1998—officially released March 30, 1999

*Paul M. Clyons*, for the appellant (plaintiff).

*Jon S. Berk*, for the appellee (defendant).

*Opinion*

CALLAHAN, C. J. The dispositive issue in this appeal is whether the contracts of insurance at issue relieved the defendant automobile liability insurer of the obligation to provide underinsured motorist benefits to the

plaintiff.[1] We conclude that they did and affirm the judgment of the trial court.

The following facts and procedural history are undisputed. On August 19, 1994, the plaintiff, Ethel Orkney, was a passenger in a motor vehicle that was owned and operated by Norman Nicholson. The Nicholson vehicle was involved in an accident with an automobile driven by Sachito Sekiguchi. The plaintiff alleges that the accident was caused by Sekiguchi's negligence and that she was injured as a result of that negligence.

Alamo Rent-A-Car, Inc. (Alamo), was the owner of the vehicle operated by Sekiguchi (rental vehicle). The automobile rental agreement between Alamo and Sekiguchi provided that, "[u]nless contrary to state law . . . if there is no other valid and collectible insurance . . . available to the renter . . . sufficient to meet minimum financial responsibility law requirements, then . . . Alamo shall provide protection against liability for bodily injury, death or property damage to others up to the minimum financial responsibility limits required by applicable law. Such protection shall be provided through either an insurance policy or a certificate of self insurance . . . . [The renter agrees] that any amounts over this minimum will be covered by [the renter] or by [his] liability policy and that [he] will indemnify [Alamo] for any losses that exceed the minimum limits." Connecticut law requires that automobile insurance policies provide minimum liability coverage

---

[1] See General Statutes § 38a-336, which provides in relevant part: "(a) (1) Each automobile liability insurance policy shall provide insurance, herein called uninsured and underinsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom. . . . "

of $20,000 per person for bodily injury or death and $40,000 per accident.[2] Thus, with respect to the plaintiff's alleged injuries, Alamo provided Sekiguchi, in her capacity as the driver of the rental vehicle, with liability insurance coverage of $20,000. Sekiguchi had no other automobile liability insurance coverage.

On March 4, 1994, Alamo, as an owner of rental vehicles registered in Connecticut, had filed an application[3] for self-insurer status with the Connecticut department of insurance. The application was approved effective March 15, 1994. Consequently, at the time of the accident, Alamo was a self-insurer under Connecticut law.

The plaintiff sought to recover damages from Sekiguchi and Alamo[4] for injuries that she allegedly had sustained in the accident caused by Sekiguchi's negligence. She subsequently settled her claims against Sekiguchi and Alamo for a total of $20,000—the maximum liability coverage the rental agreement *provided Sekiguchi* in her capacity as the driver of the rental vehicle.[5]

---

[2] See Regs., Conn. State Agencies § 38a-334-5; see also General Statutes §§ 14-112, 38a-335.

[3] The application indicated that Alamo had the following automobile liability insurance coverage:

"Continental Insurance Company, Policy SRE 9561211, 10/1/91–10/1/94 Provides $4.0 million CSL excess of $1.0 million.

"Umbrella Liability with Royal Indemnity Company, Policy RHN 005674, 10/1/93–10/1/96 Provides $5.0 million excess of primary.

"Excess Liability:

"Reliance Insurance Company, Policy NEA 0105309, 10/1/93–10/1/94 Provides $5.0 million excess of $10.0 million.

"Transamerica Insurance Company, Policy XLX 2827656, 10/1/93–10/1/94 Provides $25.0 million excess of $15.0 million.

"Aetna Casualty and Surety Company, Policy 008 XN23656576 SCA, 10/1/93–10/1/94 Provides $10.0 million excess of $40.0 million."

[4] General Statutes § 14-154a provides: "Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased, to the same extent as the operator would have been liable if he had also been the owner."

[5] The plaintiff did not bring a separate claim against Alamo in its capacity as owner of the rental vehicle. Moreover, as part of the settlement agreement, the plaintiff released Alamo from all future claims.

Thereafter, the plaintiff commenced this action for underinsured motorist benefits against Nicholson's carrier, and, coincidentally, her own carrier, the defendant, Hanover Insurance Company, claiming underinsured motorist coverage under both Nicholson's automobile liability policy and her own automobile liability policy (Hanover policies).[6] The defendant moved for summary judgment on the ground that its policies did not provide coverage for the plaintiff's claims because: (1) although the plaintiff had exhausted the liability insurance coverage available to Sekiguchi as the driver of the rental car, she had failed to exhaust the liability coverage available to Alamo as the owner of the rental car;[7] and (2) the policies specifically excluded vehicles owned by self-insurers from the policy definition of underinsured motor vehicles, and Alamo, the owner of the rental car, was a self-insurer under Connecticut law. Concluding that the plaintiff had failed to exhaust the limits of Alamo's liability coverage, the trial court granted the defendant's motion for summary judgment.

The plaintiff appealed from the judgment of the trial court to the Appellate Court, and, pursuant to Practice Book § 63-4 (1) (A), the defendant subsequently filed a timely preliminary statement of issues as alternative grounds for affirmance of the trial court's judgment. We transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

As an alternate ground for affirmance of the trial court's judgment,[8] the defendant contends that, as a

[6] General Statutes § 38a-336 (d) provides in relevant part: "If a person insured for uninsured and underinsured motorist coverage is an occupant of a nonowned vehicle covered by a policy also providing uninsured and underinsured motorist coverage, the coverage of the occupied vehicle shall be primary and any coverage for which such person is a named insured shall be secondary. . . ." Coverage under Nicholson's liability insurance policy, therefore, was primary, and coverage under the plaintiff's own automobile liability insurance policy was secondary.

[7] See General Statutes § 38a-336 (b).

[8] Because the dispositive issue is the defendant's claim that the Hanover policies excluded motor vehicles owned by self-insurers from the policy

matter of law, the plaintiff was not entitled to receive underinsured motorist benefits from it because the Hanover policies explicitly excluded vehicles owned by self-insurers from the policy definition of underinsured motor vehicles. The plaintiff does not dispute that the Hanover policies exclude underinsured motorist coverage for vehicles owned by self-insurers and that Alamo was a self-insurer under Connecticut law. Rather, the plaintiff argues that: (1) although § 38a-334-6 (c) (2) (B) of the Regulations of Connecticut State Agencies[9] permits vehicles owned by self-insurers to be excluded from *uninsured* motorist coverage, it does not permit vehicles owned by self-insurers to be excluded from *underinsured* motorist coverage; and (2) if § 38a-334-6 (c) (2) (B) does permit automobile liability insurance providers to exclude self-insured vehicles from the purview of underinsured motorist coverage, the regulation is invalid.[10] We are unpersuaded by the plaintiff's arguments.

definition of underinsured motor vehicles, we do not address the parties' additional claims.

[9] Section 38a-334-6 of the Regulations of Connecticut State Agencies provides in relevant part: "(a) Coverage. The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured motor vehicle. This coverage shall insure the occupants of every motor vehicle to which the bodily injury liability coverage applies. 'Uninsured motor vehicle' includes a motor vehicle insured against liability by an insurer that is or becomes insolvent. . . .

"(c) Exclusions. The insurer's obligations to pay may be made inapplicable:

"(1) To any claim which has been settled with the uninsured motorist without the consent of the insurer;

"(2) if the uninsured motor vehicle is owned by

"(A) the named insured or any relative who is a resident of the same household or is furnished for the regular use of any of the foregoing,

"(B) a self insurer under any motor vehicle law, or

"(C) any government or agency thereof . . . ."

[10] Because our conclusion that self-insured vehicles may be excluded from both uninsured and underinsured motorist coverage is dispositive of this appeal, we do not address the parties' remaining claims.

"The standard of review for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Levine* v. *Advest, Inc.*, 244 Conn. 732, 743, 714 A.2d 649 (1998); *Maffucci* v. *Royal Park Ltd. Partnership*, 243 Conn. 552, 554, 707 A.2d 15 (1998); see Practice Book § 17-49.

An insurer's responsibility to provide uninsured and underinsured motorist coverage is mandatory, not discretionary. General Statutes § 38a-336 (a) (1) provides in relevant part that "[e]ach automobile liability insurance policy shall provide insurance, herein called uninsured and underinsured motorist coverage, *in accordance with the regulations adopted pursuant to section 38a-334 . . . .*"[11] (Emphasis added.) We previously have concluded, moreover, that "an insurer may not, by contract, reduce its liability for . . . uninsured or underinsured motorist coverage," except as authorized by § 38a-334-6 of the Regulations of Connecticut State Agencies. *Vitti* v. *Allstate Ins. Co.*, 245 Conn. 169, 174, 713 A.2d 1269 (1998); *Streitweiser* v. *Middlesex Mutual Assurance Co.*, 219 Conn. 371, 377–78, 593 A.2d 498 (1991); *Allstate Ins. Co.* v. *Ferrante*, 201 Conn. 478, 483, 518 A.2d 373 (1986). Consequently, the provision of the Hanover policies that excludes motor vehicles owned by self-insurers from the policy definition of

---

[11] General Statutes § 38a-334 provides in relevant part: "(a) The Insurance Commissioner shall adopt regulations with respect to minimum provisions to be included in automobile liability insurance policies . . . . Such regulations shall relate to the insuring agreements, *exclusions*, conditions and other terms applicable to the bodily injury liability, property damage liability, medical payments and uninsured motorists coverages under such policies . . . ." (Emphasis added.)

"underinsured motor vehicle" is enforceable only if properly authorized by § 38a-334-6.

Section 38a-334-6 (c) provides in relevant part that "[t]he insurer's obligations to pay may be made inapplicable . . . (2) if the uninsured vehicle is owned by (A) the named insured . . . [or] (B) *a self insurer under any motor vehicle law . . . .*" (Emphasis added.) In the plaintiff's view, the lack of a direct reference in the regulation to *underinsured* motor vehicles indicates that the regulation does not apply to such vehicles. We repeatedly have stated, however, that the statutes and regulations applicable to uninsured motorist coverage also apply to underinsured motorist coverage. See, e.g., *Colonial Penn Ins. Co.* v. *Bryant*, 245 Conn. 710, 712 n.2, 714 A.2d 1209 (1998); *Lowrey* v. *Valley Forge Ins. Co.*, 224 Conn. 152, 153 n.1, 617 A.2d 454 (1992); *McGlinchey* v. *Aetna Casualty & Surety Co.*, 224 Conn. 133, 134–35, 617 A.2d 445 (1992); *Hotkowski* v. *Aetna Life & Casualty Co.*, 224 Conn. 145, 151, 617 A.2d 451 (1992); *Covenant Ins. Co.* v. *Coon*, 220 Conn. 30, 31 n.3, 594 A.2d 977 (1991). In fact, we previously have determined that the coverage exclusion authorized in § 38a-334-6 (c) (2) (A) for vehicles owned by a named insured applies to underinsured motorist coverage as well as to uninsured motorist coverage. *Lowrey* v. *Valley Forge Ins. Co.*, supra, 152. We conclude, therefore, that § 38a-334-6 (c) (2) (B) authorizes the exclusion of vehicles owned by self-insurers from the scope of the underinsured motorist coverage provided by an automobile liability insurance policy.

The plaintiff argues, however, that if § 38a-334-6 (c) (2) (B) permits the exclusion of motor vehicles owned by self-insurers from underinsured motorist coverage, the regulation is invalid because, in the plaintiff's view, permitting such exclusions contravenes the purpose of

the underinsured motorist statute. "The plaintiff [however] has a difficult task to demonstrate that [§ 38a-334-6 (c) (2) (B)] is beyond the scope of the insurance commissioner's authority. *Mass* v. *United States Fidelity & Guaranty Co.*, 222 Conn. 631, 649, 610 A.2d 1185 (1992); *Travelers Ins. Co.* v. *Kulla*, 216 Conn. 390, 399, 579 A.2d 525 (1990). The commissioner is specifically authorized by statute to promulgate regulations regarding exclusions . . . applicable to . . . uninsured motorists coverages . . . . General Statutes § 38a-334 (a). Regulations issued by the insurance commissioner to implement the statutes governing uninsured [and underinsured] motorist coverage are presumed valid and have the force and effect of a statute. *Dugas* v. *Lumbermens Mutual Casualty Co.*, 217 Conn. 631, 641, 587 A.2d 415 (1991); *Lumbermens Mutual Casualty Co.* v. *Huntley*, 223 Conn. 22, 30 n.11, 610 A.2d 1292 (1992); *Travelers Ins. Co.* v. *Kulla*, supra, 394. The person claiming the invalidity of a regulation has the burden of proving that it is inconsistent with or beyond the legislative grant. . . . [Furthermore], the insurance commissioner has a very broad grant of regulatory authority in filling in the interstices of the uninsured and underinsured motorist coverage legislation, and in doing so his regulation is entitled to great deference. . . . *Mass* v. *United States Fidelity & Guaranty Co.*, supra, 649; *Rydingsword* v. *Liberty Mutual Ins. Co.*, [224 Conn. 8, 18 n.16, 615 A.2d 1032 (1992)]; *Dugas* v. *Lumbermens Mutual Casualty Co.*, supra, 643; *Roy* v. *Centennial Ins. Co.*, [171 Conn. 463, 473, 370 A.2d 1011 (1976)]." (Internal quotation marks omitted.) *Vitti* v. *Allstate Ins. Co.*, supra, 245 Conn. 181–82.

"We have acknowledged that [n]ot only is the commissioner obligated to adopt regulations with respect to the minimum provisions to be included in the policy of insurance issued in this state; General Statutes § 38a-334; we presume that these regulations are an accurate

reflection of the legislative intent articulated in the statute's more general language. . . . *General Accident Ins. Co.* v. *Wheeler*, 221 Conn. 206, 211, 603 A.2d 385 (1992); accord *AFSCME* v. *New Britain*, 206 Conn. 465, 470, 538 A.2d 1022 (1988); *Texaco Refining & Marketing Co.* v. *Commissioner of Revenue Services*, 202 Conn. 583, 599–600, 522 A.2d 771 (1987). . . . [Moreover, if] a regulation has been in existence for a substantial period of time and the legislature has not sought to override the regulation, this fact, although not determinative, provides persuasive evidence of the continued validity of the regulation." (Citation omitted; internal quotation marks omitted.) *Vitti* v. *Allstate Ins. Co.*, supra, 245 Conn. 182–83.

The regulation at issue in this appeal, § 38a-334-6 (c) (2) (B), formerly § 38-175a-6 (c) (2) (B), took effect on January 1, 1968.[12] Since 1979, when underinsured motorist coverage was mandated; Public Acts 1979, No. 79-235; the legislature has amended § 38a-336 nine times,[13] but it has never taken any action to prohibit an automobile liability insurer from excluding vehicles owned by self-insurers from underinsured motorist coverage as authorized by § 38a-334-6 (c) (2) (B)—strong evidence that the commissioner's authorization of the exclusion is valid.

Moreover, although "[t]he public policy established by the [under]insured motorist statute is that every insured is entitled to recover for the damages he or she

———

[12] In 1968, § 38-175a-6 (c) of the Regulations of Connecticut State Agencies, now § 38a-334-6 (c), provided in relevant part: "The insurer's obligations to pay may be made inapplicable . . . (2) if the uninsured automobile is owned by . . . (B) a self insurer under any motor vehicle law . . . ." See footnote 9 of this opinion.

[13] See Public Acts 1982, No. 82-441, §§ 20 and 23; Public Acts 1983, No. 83-267, § 2; Public Acts 1983, No. 83-461; Public Acts 1985, No. 85-7; Public Acts 1986, No. 86-403, §§ 79 and 132; Public Acts 1990, No. 90-243, § 127; Public Acts 1993, No. 93-77, §§ 2 and 4; Public Acts 1993, No. 93-297, §§ 1 and 29; Public Acts, Spec. Sess., May 25, 1994, No. 94-1, §§ 35, 36, 130.

would have been able to recover if the [under]insured motorist had maintained [an adequate] policy of liability insurance"; (internal quotation marks omitted) *Haynes* v. *Yale-New Haven Hospital,* 243 Conn. 17, 27, 699 A.2d 964 (1997); *Rydingsword* v. *Liberty Mutual Ins. Co.,* supra, 224 Conn. 18; "[t]he statute does not require that [under]insured motorist coverage be made available when the insured has been otherwise protected . . . . Nor does the statute provide that the [under]insured motorist coverage shall stand as an independent source of recovery for the insured, or that the coverage limits shall not be reduced under appropriate circumstances. The statute merely requires that a certain minimum level of protection be provided for those insured under automobile liability insurance policies; *the insurance commissioner has been left with the task of defining those terms and conditions which will suffice to satisfy the requirement of protection.*" (Emphasis in original; internal quotation marks omitted.) *Vitti* v. *Allstate Ins. Co.,* supra, 245 Conn. 184.

The statutory scheme governing self-insurance requires the commissioner of insurance to ascertain whether an applicant for self-insurer status possesses resources adequate for waiver of the minimum insurance coverage requirements. General Statutes § 14-129 provides in relevant part that "[a]ny person in whose name more than twenty-five motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the commissioner . . . . The commissioner may, in his discretion, upon the application of such person, issue a certificate of self-insurance when he is satisfied that such person is possessed and will continue to be possessed of *ability to pay judgments obtained against such person. . . .*" (Emphasis added.) Furthermore, General Statutes § 38a-371 provides in relevant part that "[t]he owner of a private passenger motor vehicle required to be

registered in this state shall provide and continuously maintain throughout the registration period security in accordance with sections 38a-334 to 38a-343, inclusive. . . . The security required by this section, may be provided by a policy of insurance complying with this section issued by or on behalf of an insurer licensed to transact business in this state . . . . Subject to approval of the Insurance Commissioner the security required by this section, [also] may be provided by self-insurance by filing with the commissioner in satisfactory form: (1) A continuing undertaking by the owner or other appropriate person to perform all obligations imposed by this section; (2) evidence that appropriate provision exists for the prompt and efficient administration of all claims, benefits, and obligations provided by this section; and (3) *evidence that reliable financial arrangements, deposits or commitments exist providing assurance for payment of all obligations imposed by this section substantially equivalent to those afforded by a policy of insurance that would comply with this section.* A person who provides security under this subsection is a self-insurer. . . ." (Emphasis added.) Thus, in order to obtain status as a self-insurer, an owner of a motor vehicle must demonstrate to the commissioner of insurance the ability to pay judgments rendered against the owner as a result of the operation of the motor vehicle. We find nothing inconsistent between the public policy underlying underinsured motorist coverage and a regulation that permits a coverage exclusion that is based upon a demonstrated ability to pay judgments rendered. An individual who is injured by virtue of the operation of a self-insured rental vehicle may seek compensation from the owner of that vehicle. The fact that the plaintiff chose to settle her claims against Sekiguchi, the driver of the rental vehicle, and Alamo, the self-insured owner of the rental vehicle, for less than her alleged total damages simply does not

provide a basis for permitting the plaintiff to recover underinsured motorist benefits from the defendant.

The judgment is affirmed.

In this opinion the other justices concurred.

