[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The dispute evolving into this civil action arose between adjoining property owners involving an alleged right of way. The plaintiff Adil Mulla initiated the action to enjoin the defendants from interfering with his use of a right of way across the defendant's property and to recover damages. The defendants filed a counterclaim, seeking a judgment to quiet title to their property free of the right of way.
On January 11, 2000, the plaintiff moved for summary judgment in his favor on the complaint and on the defendant's counterclaim. The motion was accompanied with a memorandum of law, the plaintiffs affidavit, copies of deeds, and maps, correspondence and the deposition of the defendant James P. McGuire. On February 22, 2000, the defendants filed a cross motion for summary judgment, seeking judgment in their favor on the complaint and the counterclaim. The defendant's motion was accompanied with an affidavit of defendant James McGuire, copies of deeds, the deposition of William A. Manasse and a memorandum of law supporting the motion and opposing the plaintiffs motion. On March 2, 2000, the plaintiff filed a memorandum in opposition to the defendant's motion. The court heard argument on both motions on March 6, 2000. This memorandum of decision addresses both motions. CT Page 6615
The parties agree that the primary issue is whether the July 1989 quit claim deed from Windy Ridge, the plaintiffs predecessor in title, to the defendants extinguished the right of way. There are, however, three specific arguments presented by the plaintiff in his motion.
The plaintiff argues that he is entitled to summary judgment because: 1) he holds record title to the right of way, conveyed by warranty deed to him; 2) nonuse of an easement created by deed, however long continued, does not create an abandonment of the easement and does not extinguish the easement; and 3) the terminology used in the reservation of the right of way does not limit the use to quarrying purposes. Because the court finds that the right of way was extinguished by a quitclaim deed in July 1989, the court does not address each of these arguments.
The following facts are not in dispute. The defendants own property in Warren, Connecticut (the Maguire property), located on the westerly and easterly side of Melius Road. The plaintiff owns property on the easterly side of Melius Road (the Mulla property). On October 26, 1942, Richard A. Morgan, as executor of the will of Emily M. Morgan, conveyed the Maguire property to James P. Maguire, Sr. and Huldah Johnson Maguire, parents of the defendant, James P. Maguire, Jr., by an executor's deed containing the clause, "[r]eserving to the grantor, his heirs and successors and assigns, right of way across second piece from road to quarry located Easterly of said piece." (Defendants' Exhibit 2; Plaintiff's Exhibit 4).
On May 12, 1944, Richard Morgan conveyed the Mulla property to Robert J. Cashion and Edna K. Cashion, by executor's deed, together with "right of way to quarry over land of Maguire, affecting Second Piece." (Defendants' Exhibit 2; Plaintiff's Exhibit 1). On December 26, 1959, the Cashions conveyed that property to their corporation, Windy Ridge, Inc., "together with right of way to quarry over land of said Maguire. . . ." (Defendants' Exhibit 3; Plaintiff's Exhibit 2).
On September 11, 1970, Huldah Johnson Maguire conveyed the Maguire property to the defendant James P. Maguire, Jr. by a quitclaim deed. On July 31, 1974, the defendant, James Maguire, Jr., conveyed the Maguire property to himself and the defendant, Catherine Maguire, in joint tenancy, by a quitclaim deed. On August 28, 1986, the defendants quitclaimed the Maguire property to themselves as trustees to be held in trust for their children.
In 1988, Robert Cashion had a survey done of the Mulla property. The survey revealed questions concerning the boundaries of neighboring properties, including the Maguire property. James P. Maguire indicated that he would agree with the boundary lines as indicated on the survey CT Page 6616 map. A quitclaim drafted by Cashion was executed on July 26, 1989, and stated that, "[t]he intention of this deed is to establish the above referenced lines as the boundary line between the grantor's and grantee's property." (Defendants' Exhibit 9; Plaintiff's Exhibit 10). The July 1989 deed made no mention of a reservation of the right of way across the Maguire property. On August 10, 1989, the defendants executed a quitclaim deed to Windy Ridge for the 230.19 acres shown on the Adams survey. (Defendants' Exhibit 10; Plaintiff's Exhibit 11). This deed made no mention of a right of way across the Maguire property. The defendants now claim that the July 1989 deed quitclaimed to them all of the right, title and interest of Windy Ridge in the Maguire property, including the right of way, thereby establishing the boundary lines and extinguishing the right of way.
On June 14, 1995, the plaintiff executed an offer to purchase the Mulla property and a real estate contract of sale. The contract described the property as a vacant land of 230.919 acres and made no mention of the now disputed right of way. After the contract was executed, the plaintiffs attorney requested that the deed be revised to include the right of way as contained in the 1942 deed from Morgan to Maguire. On July 10, 1995, a warranty deed was executed conveying the Mulla property to the plaintiff. This deed contained the clause, "[t]ogether with an Easement recorded in Volume 23 page 15 of the Warren Land Records."
In 1993, the defendants' son, John Maguire, built a house and driveway on the Maguire property. The driveway was constructed over a portion of the alleged right of way. During 1996, the defendant, James P. Maguire, Jr., noticed the plaintiff using his son's driveway to cross the Maguire property. After asking the plaintiff what he was doing, the defendant learned that the plaintiff was attempting to use what he believed to be his right of way. Subsequently, the way was blocked by the defendants' son with boulders, a telephone pole, and a car. The plaintiff commenced this action seeking damages and an injunction restraining the defendants from interfering with his use of the right of way. The defendants filed a counterclaim, asking for a judgment determining the rights of the parties in the subject property and settling the title thereto.
Summary judgment must be granted if the pleadings, affidavits, and other documentary proof show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49; Alvarez v. New Haven Register,Inc., 249 Conn. 709, 714 (1999); Rivera v. Double A Transportation, Inc.,248 Conn. 21., 24 (1999); Orkney v. Hanover Ins. Co., 248 Conn. 195, 201
(1999). A "material" fact is one which will make a difference in the outcome of the case. Morascini v. Commissioner of Public Safety,236 Conn. 781, 808 (1996). In ruling upon a summary judgment motion, the CT Page 6617 court merely determines whether an issue of fact exists, but does not try the issue if it does exist. Michaud v. Gurney, 168 Conn. 431, 433 (1975).
The purpose of summary judgment is to eliminate the delay and expense accompanying a trial where there is no real issue to be tried. Dowling v.Kielak, 160 Conn. 14, 16 (1970); Dorazio v. M.B. Foster Electronic Co.,157 Conn. 226, 228 (1968). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Connecticut Bank Trust Co. v. Carriage LaneAssociates, 219 Conn. 772, 781 (1980).
"The principles governing the construction of instruments of conveyance are well established. In construing a deed, a court must consider the language and terms of the instrument as a whole. . . . [The court's] basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed . . . and that it shall, if possible, be so construed as to effectuate the intent of the parties. . . . In arriving at the intent expressed . . . in the language used, however, it is always admissible to consider the situation of the parties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence. . . . Moreover, the words [in the deed] are to be given their ordinary popular meaning, unless their context, or the circumstances, show that a special meaning was intended." (Citations omitted; internal quotation marks omitted.) Cohen v. City of Hartford, 244 Conn. 206, 214-15 (1998). "Although the surrounding circumstances are admissible in determining the intent of the parties, when interpreting the language of a deed the question is not what the parties may have meant to say, but the meaning of what they actually did say." American Trading Real Estate Properties,Inc. v. Trumbull, 215 Conn. 68, 75 (1990).
The July 1989 deed includes the following provision: "The intention of this deed is to establish the above referenced lines as the boundary line between the Grantor's and Grantee's property."[1] The plaintiff interprets this as meaning that the parties intended that the sole purpose of the deed was to establish boundary lines.
The early case of Hoyt v. Ketcham, 54 Conn. 60 (1886), is factually similar to this case and addresses the above argument. In that case, the original grantor, William Skiddy, conveyed land to Mary Robertson by a deed containing a condition of title that no house be constructed on the property for less than $4,000. Mary Robertson and her husband, W.H.H. Robertson, later mortgaged the property to Skiddy. Upon discharge of the mortgage, Skiddy subsequently quitclaimed his interest to W.H.H. Robertson by a deed whose language did not contain the condition of title contained in the original deed. The court considered the question whether CT Page 6618 the condition of title provision remained an incumbrance on the property despite its having been omitted from the quitclaim deed releasing the mortgage. In holding that the condition of title did not remain an incumbrance, the court stated the following: "ordinarily the meaning of a written instrument is to be gathered from the language used; and when that language is explicit and free from ambiguity, the court is not at liberty to give it a different meaning or limit its effect, for the reason that it is probable that the parties did not intend all that its language imports. The secret, unexpressed intention of the parties cannot be permitted to vary or change the meaning of the plain unambiguous language used. . . . If Skiddy had intended to limit the effect of his deed to discharging the mortgage it would have been an easy matter to say so; or he might have excepted this reversionary right from its operation. As he has not done so the law conclusively presumes that he intended to convey all his interest to Robertson. This result is reached by whatever rules of construction the matter is tested. It may be that it was an inadvertence, and that the releasor did not intend to discharge this interest. Nevertheless he has in fact done so and the law will afford him no relief." Id., 62-63.
Under a similar analysis in the present case, if Windy Ridge had intended to preserve the right of way across the Maguire property in the June 1989 deed, it could have easily stated so in the instrument. The deed conveyed "all such right and title" as Windy Ridge held to the McGuires with no limitation. Because, "a deed must be construed strictly against the grantor," the June 1989 deed must be taken to convey the entire property and interest of Windy Ridge to the defendants. Further, under the statute, because this is a quit claim deed, it releases all of the right, title and interest in and to the property "except as otherwise limited therein". General Statutes § 47-36f.
The plaintiff argues that the language in the deed stating that, "[t]he intention of this deed is to establish the above-referenced lines as the boundary line," is evidence that Windy Ridge intended to reserve the right of way. That argument relies upon an inferred insertion of "sole" as modifying "intention" in that phrase. The court will not make such an inference when the language is clear. The surrounding circumstances do not support this inference. Between the time the right of way was created in 1942 and the time of the 1989 deed, only one individual used the right of way: a squatter who died in the 1970s. After the deeds between the defendants and the Cashions and Windy Ridge were exchanged, the Cashions did not attempt to use the right of way or to make any claim to it. When the defendants' son constructed his driveway over the right of way, again, no one else used the right of way or made any claim to it. No one else used the right of way until the plaintiff, after his purchase of the property. CT Page 6619
Here, the quitclaim deed contains no explicit limitation regarding the right of way, and the language regarding the purpose of the deed does not create an ambiguity. Even if it did, the surrounding circumstances do not support a finding that the deed was intended to reserve the right of way to the plaintiffs predecessor in title.
The July 1989 deed extinguished and released the right of way. Accordingly, the defendants' cross motion for summary judgment is granted, and the plaintiffs motion for summary judgment is denied.
Judgment may enter for the defendants on the complaint and the counterclaim, and title is hereby quieted in the defendants in the disputed property. Counsel are directed to prepare an order for the court, suitable for recording on the land records, describing the property, in accordance with this decision.
DiPentima, J.