[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION: RE MOTION FOR SUMMARY JUDGMENT
The parties involved in this matter are the plaintiff, Samuel Lotstein Realty LLC ("SLRC") and the defendants Bed, Bath Beyond, Incorporated ("BBB"), Bed, Bath and Beyond Management Corporation ("BBBY"), Bed 'N Bath of Stamford ("BNBS"), Warren Eisenberg, Chairman and CEO of BBB, Leonard Feinstein, President and Co-Chief Executive Officer of BBB, Steven H. Temeres, Executive Vice President and Chief Operating Officer of BBB and Ronald Curwin, Chief Financial Officer and Treasurer of BBB.
This action arises out of an alleged breach of a commercial lease agreement between SLRC and the defendant BBB. SLRC is a Connecticut limited liability corporation that owns and manages real estate. The defendant BBB is a publicly traded corporation that owns and operates retail stores selling home furnishings and housewares.
By way of a Second Amended Complaint, the plaintiff alleges that in March of 1987, BNBS and SLRC entered into a lease for the operation of a Bed Bath Beyond store in a strip shopping center located on High Ridge CT Page 1283 Road in Stamford, CT. The term of said lease was to run until the year 2007. Plaintiff further alleges that in or about September 1997, the store closed for business and vacated the aforementioned premises in November 1997. In November 1998, the defendants discontinued the payments of rents and other charges under the aforementioned lease. SLRC accepted the defendants' surrender of the premises on or about April 1, 1999.
Plaintiff alleges that on or about November 1997, the defendants opened a new Bed, Bath Beyond store on essentially the same thoroughfare and within the trade and market area of the Bed, Bath Beyond that was the subject of the aforementioned lease.
Plaintiff asserts that the defendants have in lieu and substitution of the rights of the Bed, Bath Beyond store that was the subject of the aforementioned lease, assigned to a new Bed, Bath Beyond store in a different location, the right to use the trade name, trademark, service mark and other indicia of doing business as Bed, Bath Beyond so that the name will no longer be associated with the consuming public with the Bed, Bath Beyond store that was the subject of the aforementioned lease.
Plaintiff further asserts that if the defendant BNBS ever had any corporate existence at all, it was only a shell corporation and in reality never had any de facto separate existence and was and is the subject of operation, control, administration, management or the defendants BBB, BBBY, and is a mere instrumentality and is de jure the alter ego of the defendants BBB and BBBY.
Plaintiff's Second Amended Complaint was brought in three counts. The First Count of the plaintiff's complaint sounds in a breach of contract action. This count is entitled "Breach of Lease; Instrumentality/Alter Ego Liability as to Bed, Bath Beyond, Inc., BBBY Management Corporation, Warren Eisenberg, Leonard Feinstein, Steven H. Temeres, Ronald Curwin."
The Second Count of the plaintiff's complaint sounds in a breach of contract action as to the defendant BNBS.
The Third Count of the plaintiff's complaint sounds in a violation of the Connecticut Unfair Trade Practices Act as to the defendants BBB, BBBY, Warren Eisenberg, Leonard Feinstein, Steven Temeres and Ronald Curwin.
On June 26, 2001, the defendant filed a motion for summary judgment asserting in pertinent part that:
CT Page 1284 (1) The rules of piercing the corporate veil do not apply to this case and cannot be used to rewrite the lease agreement or to provide the plaintiff with the guarantees that the moving defendants refused to provide during lease negotiations; and
 (2) CUTPA does not apply to this case because there is no evidence that the moving defendants committed an unfair or deceptive act in their trade or business.
By way of a pleading filed on August 3, 2001, the plaintiffs objected to the defendant's motion for summary judgment.
Section 17-45 of the Connecticut Practice Book concerns the proceedings for motions for summary judgment. It provides that:
 A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. The motion shall be placed on the short calendar to be held not less than fifteen days following the filing of the motion and the supporting materials, unless the judicial authority otherwise directs. The adverse party [prior to the day the case is set down for short calendar] shall at least five days before the date the motion is to be considered on the short calendar file opposing affidavits and other available documentary evidence. Affidavits, and other documentary proof not already a part of the file, shall be filed and served as are pleadings.
Before addressing the merits of the defendant's motion, a brief review of the standards for the granting of a Motion for Summary Judgment is necessary:
 "Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Orkney v. Hanover Ins. Co., 248 Conn. 195, 201, 727 A.2d 700
CT Page 1285 (1999).
 QSP, Inc. v. The Aetna Casualty Surety Co., 256 Conn. 343, 351 (2001).
 A "material fact" is a fact that will make a difference in the result of the case. See Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578, 573 A.2d 699 (1990). The facts at issue are those alleged in the pleadings. See Plouffe v. New York, N.H. HR. Co., 160 Conn. 482, 489, 280 A.2d 359
(1971). The party seeking summary judgment "has the burden of showing the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law." D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434, 429 A.2d 908 (1980).
 Norse Systems, Inc. v. Tingley Systems, Inc., 49 Conn. App. 582, 590 (1998).
The parties have provided this court with voluminous documentation in support of the motion and in opposition to said motion including the subject lease agreement; portions of deposition transcripts; affidavits; portions of transcripts of court proceedings; a Stipulation of Facts. All of the submitted evidence has been reviewed and considered by the court in its deliberations concerning this motion.
The first issue raised by the defendants in their motion for summary judgment affects the First Count of the complaint. The defendants assert that "[t]he rules of piercing the corporate veil do no apply to this case and cannot be used to rewrite the lease agreement or to provide the plaintiff with the guarantees that the moving defendants refused to provide during lease negotiations."
The Connecticut Supreme Court has adopted two tests to apply when addressing the situation of piercing the corporate veil. The first test known as the "instrumentality test", applies when a corporation is a mere instrumentality or agent of another corporation or individual owning all or most of its stock. Zaist v. Olson, 154 Conn. 563, 573 (1967). The instrumentality test requires proof of three elements:
 (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the CT Page 1286 corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
 (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and
 (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of
 Id. at 575.
The second test concerning the piercing of a corporate veil is known as the "identity" rule.
 The "identity" rule, which complements [the instrumentality test] imposes liability in a multiple corporation situation if the plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or never begun and that an adherence to the fiction of separate identity would serve only to defeat justice by permitting the defendant to escape liability arising out of an operation conducted by one corporation for his benefit.
 Id. at 563.
 "If plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise." (citations omitted)
 Id. at 576.
 Courts pierce the corporate veil only under "exceptional circumstances"
CT Page 1287 Keefe v. Norwalk Cove Marina, Inc., 57 Conn. App. 601, 614 (2000).
The gist of the defendants' argument is that under the facts of this case the application of the court's equitable powers would not further the goal of preventing fraud and therefore the plaintiff is not to the relief that it seeks, i.e., the piercing of the corporate veil. The defendants assert that the parties to the subject lease are "two sophisticated commercial" entities. They further assert that at no time did BNBS mislead the plaintiff concerning the fact that plaintiff was contracting with a shell corporation.
The gist of plaintiff's argument is that it need not prove fraud in order to hold the defendants liable under corporate veil piercing principles.
Although the defendants assert that the corporate veil can only be pierced in situations wherein there is fraud or an illegal purpose, our courts have not construed the instrumentality rule so narrowly.
 The instrumentality rule merely requires the trial court to find that the defendants committed an unjust act in contravention of the plaintiff's legal rights.
 Toshiba America Med. Sys. v. Mobile Med. Sys., 53 Conn. App. 484, 491 (1999).
 "When the statutory privilege of doing business in the corporate form is employed as a cloak for the evasion of obligations, as a mask behind which to do injustice, or invoked to subvert equity, the separate personality of the corporation will be disregarded." (Internal quotation marks omitted.) United Electrical Contractors, Inc. v. Progress Builders, Inc., 26 Conn. App. 749, 755, 603 A.2d 1190 (1992).
 Id., at 492.
The Plaintiff in this matter asserts that the defendants used BNBS, a shell corporation to avoid BNBS's obligations under the subject lease. The First Count, Paragraph 27 of the plaintiff's Second Amended Complaint provides that:
 The control over the defendant BNBS by BBB, BBBY and the Personal Control defendants has been or may be used by the defendants to commit a fraud or wrong doing and to avoid BNBS's obligations under the Lease CT Page 1288 and Lease Amendments.
There is a genuine material issue of fact as to whether the plaintiff was a sophisticated commercial enterprise who was on the short end of a hard bargain because it chose to deal with a shell corporation, or whether the defendants' used a shell corporation to commit a wrong, dishonest or unjust act in contravention of plaintiff's legal rights. The fact that the plaintiff knew that BNBS was a shell, or that the plaintiff was a sophisticated business entity does not alter this conclusion.
The defendants have not sustained their burden of proof to show that no genuine issues of facts remain in this matter, the motion to summary judgment as to the First Count of the Second Amended Complaint is therefore denied.
As to the Third Count, as previously stated herein, the defendants assert that CUTPA does not apply to this case because there is no evidence that the moving defendants committed an unfair or deceptive act in their trade or business.
Section 42-110b of the Connecticut General Statutes concerns the prohibition of unfair trade practices. Subsection 42-110b (a) provides that:
 No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.
Section 42-110g of the Connecticut General Statutes concerns an action for damages pursuant to CUTPA. Subsection 42-110g (a) provides in pertinent part that:
 Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages. Proof of public interest or public injury shall not be required in any action brought under this section . . .
 Third Count Paragraph 49 of the plaintiff's complaint provides that:
CT Page 1289
 The actions of each of the other defendants who are controlling defendant BNBS and/or the manner in which they are controlling BNBS is unfair and deceptive and accordingly is in violation of the Connecticut Unfair Trade Practices Act, Connecticut General Statutes § 42-110a, et seq.
 Third Count Paragraph 50 of the plaintiff's complaint provides that:
 The plaintiff has suffer (sic) an ascertainable injury as a result of the foregoing.
The defendants assert in their motion that there is no evidence that they committed an unfair or deceptive practice. The plaintiff has alleged in its complaint that defendants' business dealings with BNBS, and BNBS dealings with the plaintiff constitute an unfair trade practice.
Construing the complaint in plaintiff's best light, the complaint sets forth a fact pattern that supports a CUTPA action. There are genuine issues of material fact present that must be considered by a fact finder and cannot be resolved as a matter of law. The motion for summary judgment as to the Third Count is therefore denied.
In conclusion, for all of the foregoing reasons the defendants' motion for summary judgment as to the First and Third Counts of the Second Amended Complaint is denied.
Richard A. Robinson, J. January 28, 2002 CT Page 1290